Opinion Issued November 10, 2004



















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-03-01035-CR
____________

MARVIN MILLER, Appellant

V.

THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 174th District Court
Harris County, Texas
Trial Court Cause No. 938093
 

 
 
 
* * * * *


____________

NO. 01-03-01038-CR
____________

REGINALD KEITH LEROY, Appellant
V.
THE STATE OF TEXAS, Appellee



On Appeal from the 174th District Court
Harris County, Texas
Trial Court Cause No. 938092



O P I N I O N

          In a joint trial, a jury found appellants, Marvin Miller and Reginald Keith
Leroy, guilty of the offense of aggravated robbery. After finding true the allegations
in two enhancement paragraphs in each case that appellants each had two prior felony
convictions, the trial court assessed Miller’s punishment at confinement for 25 years
and Leroy’s punishment at confinement for 40 years. In five issues, appellants
contend that the trial court erred in denying their requests to have an interpreter
appointed to assist the complainant in testifying, that the evidence is legally and
factually insufficient to support their convictions, and that their trial counsel rendered
ineffective assistance in not objecting to leading questions. In a sixth issue, Leroy
contends that his trial counsel rendered ineffective assistance in eliciting adverse
testimony on cross-examination. We reverse both convictions and remand.
Facts
          Oscar Cardenas, the complainant, testified that, on January 24, 2003, at
approximately 6:00 p.m., he was working part-time for a maintenance crew cleaning
an office building, and he unlocked the door to the offices of Apogee Engineering
(Apogee). When he entered Apogee’s offices to vacuum, he noticed papers strewn
all over the floor and saw a man whom he later identified as Miller. The complainant
testified that Miller immediately walked over to him, pulled out a knife, grabbed him
by the neck, and said “if you scream, I hit you, I kill you.” The complainant complied
with Miller’s order because he feared that Miller would “kill [him].” Miller
subsequently called out to a man, whom the complainant later identified as Leroy,
who was hiding in an access tunnel above Apogee’s offices. Leroy then “came
through the ceiling” into the office.
          At this point, Leroy began looking through the drawers of a desk in the office,
while Miller continued restraining the complainant. After approximately 30 minutes,
Leroy picked up a glass clock. Miller took the keys to Apogee’s offices from the
complainant and unlocked the door. Miller and Leroy then left the office, closed the
door behind them, and slid the keys underneath the door. When the complainant
subsequently left the office, he saw Miller and Leroy get into a red or maroon
Cadillac, which had been parked outside the building, and drive away. The
complainant then located his supervisor and told her what had happened, and the
supervisor called for emergency assistance.
          Byron Dearixon, Apogee’s owner, testified that, when he inspected his office
after the robbery, he discovered that a clock and five checks were missing. Dearixon
could not recall the amount of each check, but he remembered that one of the checks
had been made out to Apogee in the amount of $6,812.60. During his inspection,
Dearixon also saw that two tiles were missing from the ceiling of his office and he
took this as a sign that the robbers had entered his office by climbing over from an
adjacent office space that was being renovated. Dearixon explained that, because the
door to this other office space had been left open to “air out” the space, a person
could have entered the office space, climbed up to the access tunnel above it, and then
entered his office by removing some of the ceiling tiles.
          Shawndale Jones, an employee at Ace Check Cashing, testified that, on January
27, 2003, three days after the robbery, Miller and Leroy entered the check cashing
store, and Leroy handed Jones a check and his driver’s license and asked her to cash
the check. Jones saw that the check had been made payable both to Apogee and to
Leroy and that Leroy’s name had been added to the check using a typewriter. Instead
of cashing the check, Jones “hit [her] panic button so the police would come to the
location.”
          Houston Police Officer K. Flowers testified that, on January 27, 2003, after he
was dispatched to Ace Check Cashing, he arrested Miller and Leroy and obtained the
check from Jones.
          Harris County Sheriff’s Detective T. L. Keen testified that, after he obtained
separate photographs of Miller and Leroy, he compiled two separate photographic
arrays: one consisting of a photograph of Miller and the photographs of five other
men and the other consisting of a photograph of Leroy and the photographs of five
different men. On January 28, 2003, when Keen showed the complainant the arrays,
he positively identified Miller and Leroy as the robbers.
Legal Sufficiency of the Evidence
          In their second and third issues, appellants argue that the evidence was legally
insufficient to support their convictions because the State failed to prove that they had
committed the robbery while using or exhibiting a deadly weapon or that they had
placed the complainant in fear of imminent bodily injury or death.
          We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine if any rational fact finder could have
found the essential elements of the offense beyond a reasonable doubt. King v. State,
29 S.W.3d 556, 562 (Tex. Crim. App. 2000). Although our analysis considers all
evidence presented at trial, we may not reweigh the evidence and substitute our
judgment for that of the fact finder. Id. 
          A person commits the offense of robbery if, in the course of committing theft
and with the intent to obtain or maintain control of property, he intentionally or
knowingly threatens or places another in fear of imminent bodily injury or death. 
Tex. Pen. Code Ann. § 29.02 (Vernon 2003). A person commits the offense of
aggravated robbery if he commits robbery and uses or exhibits a deadly weapon. Id.
§ 29.03(a)(2) (Vernon 2003).
          Under the law of parties, a person is criminally responsible as a party to an
offense if the offense is committed by his own conduct, by the conduct of another for
which he is criminally responsible, or by both. Id. § 7.01(a)(2) (Vernon 2003). A
person is criminally responsible for an offense committed by the conduct of another
if, acting with intent to promote or assist the commission of the offense, he solicits,
encourages, directs, aids, or attempts to aid the other person to commit the offense. 
Id. § 7.02(a)(2) (Vernon 2003). Each party to an offense may be charged with
commission of the offense. Id. § 7.01(b) (Vernon 2003).
Deadly Weapon
          A deadly weapon is defined as “anything that in the manner of its use or 
intended use is capable of causing death or serious bodily injury.” See id.
§ 1.07(a)(17)(B) (Vernon 2003). Although a knife is not a deadly weapon per se, a
knife can be found to be a deadly weapon based on the nature of its use or intended
use. Garcia v. State, 17 S.W.3d 1, 4 (Tex. App.—Houston [1st Dist.] 1999, pet.
ref’d). To determine whether a particular knife is a deadly weapon, courts have
considered (1) the size, shape, and sharpness of the knife; (2) the manner of its use
or intended use; (3) the nature or existence of inflicted wounds; and (4) testimony
about the knife’s life-threatening capabilities. Id.
          Appellants assert that the State failed to prove that the knife used by Miller was
a deadly weapon because (1) “the State did not introduce a knife into evidence”; (2)
“[no] witness testified as an expert to say that in his opinion the [knife] was capable
of causing serious bodily injury and death”; and (3) “[n]o testimony established that
the [knife] . . . was manifestly ‘designed, made, or adapted’ for the purpose of
inflicting bodily injury.” Appellants note that the complainant testified that Miller
told him not to scream or that Miller would “kill [him].” However, appellants argue
that this testimony should be ignored because it was the “product of an improper
leading question” and was unreliable due to the complainant’s “hopeless lack of
understanding of English.”
          However, the complainant testified that, when he entered Apogee’s offices and
saw that Miller was inside, Miller pulled out a knife, grabbed the complainant by the
neck, and stated, “If you scream, I hit you, I kill you.” The complainant testified that
he complied with Miller’s order because he was afraid that Miller would “kill [him].” 
Thereafter, Leroy “came through the ceiling” into the office, and, while Miller
continued to restrain the complainant and to exhibit the knife, Leroy searched 
through the drawers of the desk for items to steal. Considering this evidence, a
rational fact finder could have found, beyond a reasonable doubt, that, based on the
manner in which Miller used the knife, it was capable of causing death or serious
bodily injury and was a deadly weapon. Tex. Pen. Code Ann. § 1.07(a)(17)(B). 
Moreover, a rational fact finder could have also found, beyond a reasonable doubt,
that Leroy, intending to assist Miller in the commission of the robbery, had aided
Miller and was, therefore, criminally responsible for Miller’s exhibition of the knife. 
See id. § 7.02(a)(2).
Fear of Imminent Bodily Injury or Death
          Appellants also contend that the State failed to prove that they “threatened or
placed the complainant . . . in fear of imminent bodily injury or death.” Appellants
assert that, “although the complainant testified that he was in fear of serious bodily
injury or death, he suffered no wounds, the knife was not introduced into evidence,
and the State had failed to establish its potential for harm through expert testimony
by a Houston police officer.”
          However, as conceded by appellants, the complainant did testify that, when
Miller grabbed him by the neck, held a knife by his side, and stated, “If you scream,
I hit you, I kill you,” he feared that Miller would indeed “kill [him].” The
complainant further testified that he did not return to work for a week because he was
still afraid. Considering this evidence, a rational fact finder could have found,
beyond a reasonable doubt, that Miller had placed the complainant in fear of
imminent bodily injury or death.
          Accordingly, we hold that the evidence was legally sufficient to support
appellants’ convictions.
          We overrule appellants’ second and third issues.
Appointment of an Interpreter
          In their first issue, appellants argue that the trial court erred in denying their
requests to have an interpreter appointed to assist the complainant in testifying
because the complainant “could not speak English well enough to be reliable” and 
“could not be effectively cross-examined [as] he could neither understand the
questions, or repeat many answers that [had] been attributed to him by the
investigating officer.”
          The Sixth Amendment’s Confrontation Clause provides that “[i]n all criminal
prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses
against him.” U.S. Const. amend. VI. This “bedrock procedural guarantee” applies
to both federal and state prosecutions. Crawford v. Washington, __U.S.__, __, 124
S. Ct. 1354, 1359 (2004). Likewise, the Texas Constitution guarantees that “[i]n all
criminal prosecutions the accused shall . . . be confronted by the witnesses against
him.” Tex. Const. art. I, § 10. Cross-examination has been described as “beyond
any doubt the greatest legal engine ever invented for the discovery of truth . . . the
great and permanent contribution of the Anglo-American system of law to improved
methods of trial procedure.” John H. Wigmore, A Treatise on the System of
Evidence in Trials at Common Law 2, at 1697-98 (1904). 
          The Texas Court of Criminal Appeals has acknowledged that providing an
interpreter to an accused who does not understand English is required by the
Confrontation Clause and by Article I, section 10. Baltierra v. State, 586 S.W.2d
553, 556-59 (Tex. Crim. App. 1979). Likewise, we hold that providing an interpreter
to an accused to confront a material witness who does not understand English is
required by the Confrontation Clause and by Article I, section 10. These
confrontation guarantees are simply lost to an accused who, because of a language
barrier, is deprived of the ability to test the credibility of a material witness through
cross-examination.
          We also note that Article 38.30 of the Texas Code of Criminal Procedure
provides, in pertinent part, as follows:
When a motion for an interpreter is filed by any party or on motion of
the court, in any criminal proceeding, it is determined that a person
charged or a witness does not understand and speak the English
language, an interpreter must be sworn to interpret for him.

Tex. Code Crim. Proc. Ann. art. 38.30(a) (Vernon Supp. 2004-2005) (emphasis
added). This provision is designed to protect an accused’s right of confrontation
under the federal and state constitutions. Montoya v. State, 811 S.W.2d 671, 673
(Tex. App.—Corpus Christi 1991, no pet.).
          Appellants direct our attention to numerous “passages of testimony when [the
complainant] spoke at trial that prove, even from the ‘cold record,’ that he was not
competent to testify in English.” Specifically, appellants note that, on direct
examination, the complainant did not understand several of the State’s questions,
prompting the State to rephrase the questions in leading form. Appellants also note
that, on cross-examination, the complainant testified that he did not speak English as
well as he could speak Spanish. Thus, appellants conclude that the complainant’s
command of English was so poor that appellants could not (1) “cross-examine the
complainant effectively” or (2) “counteract the effect of the leading questions from
the State.” 
          The State asserts that appellants waived their confrontation rights by
“untimely” requesting an interpreter for the complainant. Moreover, citing Diaz v.
State, 491 S.W.2d 166 (Tex. Crim. App. 1973), the State argues that there is no
reversible error here merely because the complainant did not speak fluent English. 
The State emphasizes that the trial court allowed both the State and the defense
latitude in questioning the complainant and asserts that the complainant was able to
communicate in English the facts underlying the robbery. 
          However, the Court of Criminal Appeals has recently concluded that “when a
trial judge is aware that [a] defendant has a problem understanding the English
language,” his right to have an interpreter translate the trial proceedings into a
language that he understands is a right “which must be implemented by the system
unless expressly waived.” Garcia v. State, No. 2004 WL 574554, *9 (Tex. Crim.
App. Mar. 24, 2004). The Court explained that
[i]n these circumstances, the judge has an independent duty to
implement this right in the absence of a knowing and voluntary waiver
by the defendant. The judge may become aware of the defendant’s
language problem either by being informed of it by one or both parties
or by noticing the problem sua sponte. 

Id. (emphasis added). In Garcia, the Court noted that, because the trial court “was
aware that Garcia had difficulty understanding English,” it was “required to ensure
that the trial proceedings were translated into a language which Garcia could
understand, absent an effective waiver by Garcia.” Id. The Court held that, because
Garcia did not knowingly or voluntarily waive his right to an interpreter, his Sixth
Amendment right to confront witnesses was violated. Id. We find that this reasoning
applies equally to material witnesses who have a problem understanding the English
language.
          Here, the record reveals that the complainant had great difficulty answering the
State’s questions on direct examination and that the trial court allowed the State to
examine the complainant with numerous leading questions. During the cross-examination of the complainant by Leroy’s counsel, the following colloquy
concerning the complainant’s ability to testify in English occurred outside the jury’s
presence: 
          [Counsel for Leroy]:        Your honor, I do not know whether or not his
ability is linguistics, in the fact that he does
not understand English well enough to answer
the questions, or whether or not he has some
mental deficiencies that prevents [sic] him
from answering the questions, Your Honor. 
At this point, I think it’s abundantly clear he
is not competent enough to testify adequately
and thoroughly in the English language, your
Honor.
 
          [Trial Court]:                   That will be overruled at this point. You just
have to do the best you can, just like the State
did.

                                                   So, anything else.
 
          [Counsel for Miller]:       That’s all. I concur with that request, Judge,
that this young man needs to testify through
an interpreter instead of through the English
language. 

After a recess, the trial court stated:
 
All right. For the record, the Court has made attempts to locate an
interpreter. I had no idea this was necessary where I sit. We certainly
could have had an interpreter. We probably should have had an
interpreter, but I can’t get one this afternoon. I’m not going to waste the
jury’s time. So, we’re going to continue with this. If y’all want to do
whatever you want to do with regard to that, we can deal with that at the
appropriate time. 
(Emphasis added.) The trial court thus became aware of the complainant’s language
problem during direct examination, and both appellants requested an interpreter to
perform a meaningful cross-examination. Furthermore, the trial court expressed its
own concern that an interpreter was needed so that the complainant could testify
adequately, and the court stated that it “certainly could have had an interpreter.” 
          We recognize that the trial court did not have the benefit of Garcia and was
genuinely concerned about delaying the trial. Nevertheless, under Garcia’s holding
and reasoning, once the trial court became aware of complainant’s language problem, 
it had an independent duty to implement appellants’ confrontation rights by securing
an interpreter to translate for the complainant. Based on the record presented, which
demonstrated the complainant’s language barrier and the trial court’s awareness of
that barrier, we hold that the trial court erred in not implementing appellants’
confrontation rights under both the Sixth Amendment to the United States
Constitution and Article I, section 10 of the Texas Constitution. 
          In regard to our harm analysis, we note that, although the complainant
understood and spoke English well enough to describe the robbery and to identify
appellants as his assailants, the record demonstrates that the complainant had great
difficulty answering simple questions on both direct examination and cross-examination. For example, the following exchange took place on direct examination:
          [State]:                             Now, while you were working in January, did
you — did something happen to you in one of
the offices?  
 
          [Complainant]:                No. 
          [State]:                             Nothing happened to you?
          [Complainant]:                I don’t understand. Can you repeat it?
When asked, on cross-examination, to describe how the first robber “looked to [the
complainant] that night,” the complainant answered, “It was — I can’t explain.” 
Then the following exchange occurred:
          [Counsel for Leroy]:        Do you remember talking to the officer?
          [Complainant]:                Yes.
 
[Counsel for Leroy]: Did you give him a description or did your
aunt tell him the description?
 
          [Complainant]:                I gave her the description.
          [Counsel for Leroy]:        Did you tell him — what did you tell him?
          [Complainant]:                To the police?
          [Counsel for Leroy]:        Yes.
          [Complainant]:                I don’t know. I don’t know how to say it.
          [Counsel for Leroy]:        You do not know how to say because you
don’t know the words or you don’t
remember? 
 
          [Complainant]:                I don’t know the words.
When appellants’ trial counsel expressed their frustration with the complainant’s
language barrier, the trial court acknowledged the problem when it stated, “You just
have to do the best you can, just like the State did.” The trial court then
acknowledged that “[w]e probably should have had an interpreter.” 
          Because the complainant could not understand certain basic questions posed
to him, the ability of appellants’ trial counsel to effectively cross-examine the
complainant was impeded. Harmless error analysis for Confrontation Clause
violations assumes that “the damaging potential of the cross-examination [would have
been] fully realized.” Delaware v. Van Arsdall, 475 U.S. 673, 684, 106 S.Ct. 1431, 
1438 (1986). Here, appellants were effectively deprived of the ability to test the
credibility of the complaining witness through cross-examination. Therefore, we
cannot find beyond a reasonable doubt that the trial court’s error in not implementing
appellants’ confrontation rights did not contribute to appellants’ convictions. Tex.
R. App. P. 44.2(a).
          We sustain appellants’ first issue.
Conclusion
          Having held that the trial court erred in not implementing appellants’
confrontation rights and having concluded that the error was not harmless, we need
not address appellants’ remaining issues. We reverse the judgments of the trial court
and remand these causes to the trial court for further proceedings in accordance with
this opinion.
 
 
 
                                                                        Terry Jennings
                                                                        Justice

Panel consists of Justices Taft, Jennings, and Bland.

Publish. Tex. R. App. P. 47.2(b).