Affirmed and Plurality, Concurring, and Dissenting Opinions filed January
6, 2011.

 

 

In The

 

Fourteenth Court of
Appeals

___________________

 

NO. 14-09-00677-CR

___________________

 

Joung Youn Kim, Appellant

 

V.

 

State of Texas, Appellee



 



 

On
Appeal from the County Criminal Court at Law No. 10

Harris County,
Texas



Trial Court Cause No. 1527031

 



 

 

DISSENTING OPINION

This court should reverse the trial court’s judgment
and remand for a new trial so that appellant can have an interpreter throughout
the trial proceedings.  Because the court does not do so, I respectfully
dissent.  

The other panel members presume that appellant, a
Korean national, does not speak or understand the English language and had a
right to an interpreter during trial.  They agree that appellant did not waive
this right and that the trial court erred in proceeding without an
interpreter.  But, they find the error harmless.  

In its harm analysis, the plurality applies an
incorrect legal standard and fails to consider that appellant had no
interpreter for the entire second day of trial, which included the punishment
phase.  Under a proper harm analysis, this court should conclude that the
failure to provide an interpreter is reversible error because this court cannot
determine beyond a reasonable doubt that the error did not contribute to
appellant’s conviction or punishment.

The Proper Standard for the Harm Analysis

Under binding precedent, this court should apply the
legal standard from Texas Rule of Appellate Procedure 44.2(a), rather than the
“reasonably substantial relationship” test, to measure harm from the trial
court’s failure to provide appellant with an interpreter for the entire trial. 
See Garcia v. State, 149 S.W.3d 135, 146 & n.43 (Tex. Crim. App.
2004); Garcia v. State, 161 S.W.3d 28, 29–30 (Tex. App.—Houston [14th
Dist.] 2004, no pet.).  The plurality states that “[t]he standard under which
we assess harm is the substantial relationship test.”  Ante at p. 10. 
In support of this proposition, the plurality relies upon a 1993 case involving
a harm analysis as to the trial court’s error in not having the defendant
physically present during a pre-trial proceeding.  See Adanandus v.
State, 866 S.W.2d 210, 218–20 (Tex. Crim. App. 1993).  Under the “reasonably
substantial relationship” test, the accused’s absence from the courtroom is
harmless if the accused’s presence does not bear a reasonably substantial
relationship to the accused’s opportunity to defend.  See id.  A
different standard for determining harm is contained in Rule 44.2(a):  “If the
appellate record in a criminal case reveals constitutional error that is
subject to harmless error review, the court of appeals must reverse a judgment
of conviction or punishment unless the court determines beyond a reasonable
doubt that the error did not contribute to the conviction or punishment.”  Tex.
R. App. P. 44.2(a).  

A defendant in a criminal trial has a right under the
Confrontation Clause[1]
to be present in the courtroom throughout the trial.  See Garcia, 149
S.W.3d at 140.  This entitlement includes not only a defendant’s right to be
physically present but also a right to have a qualified interpreter translate
all of the trial proceedings into a language the defendant understands if the
defendant does not understand English.  See id. at 140–41, 145.  In Garcia,
the Court of Criminal Appeals held that (1) because the accused did not
understand English, he had a right under the Confrontation Clause to have an
interpreter provided to him to translate all of the trial proceedings into a
language that he could understand, and (2) the accused did not knowingly and
voluntarily waive this right.  See id. at 140–45.  Accordingly, the
Court of Criminal Appeals reversed this court’s judgment in Garcia and
remanded the case for assessment of harm under Rule 44.2(a).  See id. at
146 & n.43.  On remand, this court followed the instructions from the
higher court and conducted a harm analysis under Rule 44.2(a); this court did
not use the “reasonably substantial relationship” test in assessing harm.  See
Garcia, 161 S.W.3d at 29–30.  

Though the Court of Criminal Appeals has not
explicitly disapproved the use of the “reasonably substantial relationship”
test applied in the Adanandus case, it implicitly disapproved the
continued utilization of this test in Jasper v. State, a case in which the
high court assessed harm as to the trial court’s error in conducting a part of
the trial without the defendant in the courtroom.  See Jasper v. State,
61 S.W.3d 413, 422–23 (Tex. Crim. App. 2001).  The Jasper court assessed
harm using the Rule 44.2(a) standard, not the “reasonably substantial
relationship” test, and research reveals no case since Jasper in which
the Court of Criminal Appeals has used the “reasonably substantial
relationship” test to assess harm for a violation of the defendant’s right to
be present in the courtroom throughout the trial.  See id.  Indeed, in
2004, the Garcia court remanded the case to this court with specific
instructions to assess harm under Rule 44.2(a) for a violation of the
defendant’s right to be present in the courtroom throughout the trial.  See
Garcia, 149 S.W.3d at 146 & n.43.  That same year, this court held that
the trial court’s erroneous exclusion of a criminal defendant from the
courtroom during the punishment phase was not harmless.  See Kessel v. State,
161 S.W.3d 40, 48–49 (Tex. App.—Houston [14th Dist.] 2004, pet. ref’d).  In
doing so, this court did not use the “reasonably substantial relationship” test
but instead applied Rule 44.2(a).  See id.  The plurality’s invocation
of the “reasonably substantial relationship” test to assess harm in the case
under review conflicts with binding precedent from both the Court of Criminal
Appeals and from this court.  See Garcia, 149 S.W.3d at 146 & n.43;
Jasper, 61 S.W.3d at 422–23; Garcia, 161 S.W.3d at 29–30; Kessel,
161 S.W.3d at 48–49.  Today, the court should assess harm under Rule 44.2(a) by
determining whether beyond a reasonable doubt the absence-of-the-interpreter
error did not contribute to appellant’s conviction or punishment.

Harmful Error

            In its harm
analysis, the plurality gives the impression that the only part of appellant’s
trial at which she did not have an interpreter was closing argument in the
guilt/innocence phase.  Appellant had no interpreter for the entire second day
of trial, which included the punishment phase during which the State offered evidence
against her.  Appellant was without an interpreter during the following parts
of the trial:

(1)       the
State’s announcement that it rested its case-in-chief, 

(2)       appellant’s
decision not to testify or present any evidence and the announcement by
appellant’s counsel that appellant rested her case, 

(3)       a bench
conference out of the presence of the jury regarding appellant’s motion for
directed verdict and appellant’s objection to proceeding without an
interpreter, 

(4)     the trial
court’s reading of the jury charge, 

(5)     closing
arguments in the guilt/innocence phase, 

(6)     the
announcement of the jury’s verdict in the guilt/innocence phase, 

(7)     the polling
of the jury, and 

(8)     the
entire punishment phase, including: 

·       
the State’s proffer of evidence against appellant,

·       
appellant’s decision not to testify or present evidence during
the punishment phase, 

·       
arguments of counsel, 

·       
discussion of an alleged prior prostitution conviction, and 

·       
the trial court’s assessment of punishment.  

The proceeding culminated in the loss of appellant’s liberty.

 

Impact of Inability to Understand Proceedings on
Appellant’s Courtroom Demeanor

The plurality concludes that the physical absence of
a defendant during closing argument might be held against her and that the
defendant’s presence might have a “psychological impact” on the jury during
closing arguments.  The plurality focuses on appellant’s physical presence in
the courtroom throughout the trial.  But the plurality does not address the
effect that appellant’s failure to understand the proceedings had on her
demeanor, comportment, and appearance in front of the jury.  Though the
plurality properly presumes that appellant did not understand English and
therefore did not understand what was occurring throughout the second day of
the trial, the plurality fails to scrutinize the impact of this inability to
understand on either appellant or the jury’s perception of appellant.  

During the State’s closing argument, appellant could
view the jury’s reactions to the prosecutor’s statements but, with no
translation, she could assign no meaning.  More importantly, because appellant
could not understand what was being said, she unwittingly might have given
those deciding her fate the wrong impression—one born out of an inability to
appreciate what was happening.  Appellant’s facial expressions, body language,
or deportment might have been inappropriate to what was being said during
closing argument.  Any inopportune change in appellant’s facial affect or other
non-verbal behavior could have been misinterpreted by the jury in ways that
prejudiced appellant.  Not understanding what was transpiring in the courtroom
due to the language barrier, appellant might have appeared aloof or
uninterested, as if she were not taking the trial seriously.  The inability to
understand the proceedings due to the absence of an interpreter can easily
cause a defendant to present an unfavorable impression to the jury.  In this
way, the accused’s physical presence uncoupled from the ability to understand
the language spoken and to respond appropriately is, in some respects, more
harmful than physical absence.

Inability
to Assist Counsel During Guilt/Innocence Phase

             The lack of an
interpreter also prejudiced appellant’s ability to assist in her own defense. 
The plurality indicates that, because the State waived its right to open during
closing arguments, appellant had no opportunity to assist her counsel in
objecting or responding to the State’s closing argument.  Even though
appellant’s counsel had no further closing argument to make, with the help of
an interpreter, appellant still would have had the ability to prompt and
communicate with her counsel regarding any misstatements made during the
State’s closing argument or objections that appellant would have liked her
counsel to have made during the State’s closing.  Though the plurality notes
that appellant’s counsel made several objections during the State’s closing
argument, the plurality does not acknowledge that, because there was no
interpreter, appellant was unable to have any input into her counsel’s objections. 
Moreover, because the trial court was assessing punishment, if appellant had
been provided the requisite interpreter so that she could understand the
closing arguments, appellant could have advised her counsel of any incorrect or
misleading statements made by the State during closing so that appellant’s
counsel, at least, could have brought such matters to the trial court’s
attention before the court assessed punishment.

Inability to Testify or Assist Counsel During Punishment Phase

            In addition, even
if a defendant has made a preliminary decision not to testify during the punishment
phase, after hearing closing arguments and the jury’s “guilty” verdict, the
defendant may (and sometimes does) decide to exercise the right to testify
during the punishment phase.  Without an interpreter, appellant did not have
that opportunity.  

            The Confrontation
Clause guarantees the accused a right to be confronted with the witnesses against
her.  Under binding precedent, the Confrontation Clause gives appellant the right
to have a qualified interpreter translate all of the trial proceedings into the
Korean language.  See Garcia, 149 S.W.3d at 140–41, 145.  Though an
interpreter was present when witnesses testified against appellant in the
guilt/innocence phase, no interpreter was present when evidence was offered
against appellant during the punishment phase.  During this part of the
proceeding, the State not only offered all of the evidence from the
guilt/innocence phase but also offered additional documents that the prosecutor
indicated contained a judgment reflecting a prior prostitution conviction of
appellant.  Appellant’s trial counsel stated he had no objections.  The trial
court reviewed the documents and determined that they did not reflect a
judgment of conviction but rather a “guilty” plea, deferred adjudication, and
dismissal of the charge following completion of deferred adjudication.  This
court presumes that, without an interpreter, appellant did not understand the
proceedings during the punishment phase and therefore was unable to communicate
with her counsel regarding the alleged prior conviction, including the
disposition of the charges, and indeed whether she was even the same person who
had been charged with prostitution in that prior case.  Because appellant
lacked an interpreter, she presumably was unable to understand the proceedings
at the crucial moment when she decided whether she should testify or offer any
evidence.  

During the punishment phase, appellant’s counsel
requested that appellant receive no fine and two days’ confinement in jail,
which appellant already had served.  The State argued for a thirty-day sentence
with no fine.  The trial court sentenced appellant to twenty days’ confinement
and a $500 fine for an offense carrying a maximum sentence of 180 days’
confinement and a $2,000 fine.  See Tex.
Penal Code. Ann. §§ 12.22, 43.02(c) (West 2008).  This court cannot
determine beyond a reasonable doubt that the absence of an interpreter did not
contribute to appellant’s punishment.  

 

Conclusion

The void created by the lack of an interpreter
impacted both appellant’s outward appearance and her internal decision-making. 
Not understanding the language spoken during the proceedings, appellant could
not be sure to have an appropriate demeanor before the jury during closing
arguments in the guilt/innocence phase.  And, without an interpreter, she could
not assist her counsel by pointing out inaccurate, misleading, or potentially
objectionable statements by the prosecutor.  Perhaps most importantly,
appellant was unable to assist in her own defense at crucial times during the
proceeding.  The record reflects that appellant had no prior convictions, yet,
without an interpreter, she lacked the ability to testify during either the
guilt/innocence phase or the punishment phase.  After reviewing the entire
record, this court should conclude that it cannot determine beyond a reasonable
doubt that the absence of an interpreter did not contribute to appellant’s
conviction or punishment.  Indeed, because of the trial court’s error, the one
who stood to lose the most from the trial proceedings was the one least
equipped to understand or participate in them.  For
these reasons, this court should reverse the trial court’s judgment and
remand for a new trial so that appellant can have an interpreter throughout the
trial proceedings.         

 

                                                                                    

/s/        
Kem Thompson Frost

                                                                                     Justice

 

Panel
consists of Justices Anderson, Frost, and Brown. (Anderson, J., plurality)
(Brown, J., concurring).

Publish — Tex. R. App. P. 47.2(b).









[1]
The Confrontation Clause is contained in the Sixth Amendment of the
Constitution of the United States.  See U.S. Const. Amend.
VI.