Jose Medrano GARCIA, Appellant,

v.

The STATE of Texas.

No. 489–03.

Court of Criminal Appeals of Texas.

March 24, 2004.

John J. Davis, Angleton, for Appellant.

Jeffrey D. Kyle, Asst. DA, Angleton, Matthew Paul, State's Attorney, Austin, for State.

## OPINION

KEASLER, J., delivered the opinion of the Court joined by MEYERS, PRICE, WOMACK, JOHNSON, HERVEY, HOLCOMB, and COCHRAN, JJ.

Jose Medrano Garcia does not speak English. His jury trial had mostly English-speaking witnesses and court personnel, and the proceedings were not translated. He did not affirmatively waive his right to translation and was apparently unaware of that right. We must decide whether Garcia's conviction violates the Confrontation Clause of the Sixth Amendment to the United States Constitution. We conclude that it does.

### Facts and Procedural History

Garcia was born in Matehuala, Mexico, and attended school there through the ninth grade. He eventually came to the United States with a "green card." He does not speak, read, or write English to any appreciable degree.

In January 2001, Garcia was introduced to the American legal system when he was charged with a sexual assault that had occurred several months earlier. He pleaded not guilty, was released on bond, and hired attorney Ken Bishop to help him

maneuver through the system. Bishop spoke no Spanish, so the two communicated solely through Bishop's bilingual legal assistant, Herminia Montoya.

### Pretrial

That summer, proceedings began with a pretrial hearing on July 23, 2001. The hearing encompassed pretrial motions as well as voir dire issues. The court reporter's record reflects that Aida Aluizo was "duly sworn as English/Spanish interpreter by Deputy District Clerk" for that hearing. The clerk's record also contains a document, dated July 23, 2001, in which Aluizo swears that she "will truly interpret for the witness, Joe Medrano Garcia, the testimony for which he/she may give in the cause now on trial."

During voir dire, defense counsel prepared the panel for the presence of an interpreter during the trial. He told them that Garcia "doesn't speak English, so we've got some interpreters here." He asked if that might matter to anyone. One venireperson asked whether Garcia was a United States citizen, and counsel responded, "I think that—he's not a citizen, but he's here on what we call a, 'Green Card' legally."

Regarding Garcia's testifying, defense counsel told the panel that Garcia did not have to testify, but that he would: "I can tell you right now that Mr. Garcia is going to testify. He wants to testify, to tell you his version of this incident, so you will be hearing from him. Now it will be through a translator. So this is one reason I asked the question a little bit earlier and mentioned about the method by which we're going to do it because he's just not quite fluent enough in English to be able to understand the questions possibly and/or respond without having a translator...."

### Trial

Trial began the next day. There is no mention in either the court reporter's record or the clerk's record of an interpreter translating the testimony throughout the trial. After the indictment was read and the court asked how the defendant would plead, Garcia did not answer. Defense counsel responded, "Not guilty, Your Honor."

The court then introduced Montoya to the jury as defense counsel's legal assistant. The judge said, "She translates pretty frequently in the courts, so she's hired by the Court."

The State presented testimony from seven witnesses. Most relevant to the issue before us today was the testimony of the complainant, the complainant's mother, and the police officer. The complainant, Erica Mendoza, testified that she is Garcia's cousin. She said that Garcia had asked her to go to the unemployment office with him so that she could translate for him. She agreed to do so, but when he came over, she said she would not be able to go after all. It was then, she said, that he sexually assaulted her.

Mendoza's mother, Rosalina Seladon, testified later, and the court reporter's record reflects that she "testified through the duly sworn interpreter." There were some breaks during her testimony at which point there were "discussion[s] between interpreter and witness in Spanish." The judge eventually instructed Aluizo to "wait until the witness is through speaking" before translating. The "clerk's worksheet" in the clerk's record reflects that, during the testimony of "Angelina Celedon" (who is apparently the same person as Rosalina Seladon), "[Aluizo] translated for her."

The police officer who served the arrest warrant on Garcia testified. During cross-

examination, defense counsel asked the officer if he was "aware that Jose Garcia only spoke Spanish?" The officer responded, "I [was] told that, but from speaking to him I could tell that he could speak a little English."

The defense presented the testimony of the complainant and Garcia. The court reporter's record reflects that Garcia was sworn in "through the interpreter" and testified "through the duly sworn interpreter." He testified that he did not assault Mendoza; instead, she approached him and consented to sexual contact between them.

When the prosecutor cross-examined Garcia and asked if he had heard his attorney questioning the victim, Garcia replied, "No, because I don't understand a lot of English." On re-direct, defense counsel asked if Garcia had understood all of the questions that the prosecutor had asked him, and Garcia said, "I wasn't able to understand well, very well."

The jury found Garcia guilty of sexual assault, and the parties reached an agreement on punishment. There was some concern about whether the punishment agreement constituted a guilty plea, and the judge said, "Well, I think what I need to do is give him all the admonitions any way." So Garcia approached the bench and at that time Aluizo was "called as the Spanish/English interpreter for the defendant, having been duly sworn as the Spanish/English Interpreter on 7/23/01."

The agreement was that Garcia would serve eight years in prison and waive his right to appeal. The court then came to the sex offender registration requirements. The judge discussed having Aluizo "read those" to Garcia. He told defense counsel to "go over that" with Aluizo and "make sure he understands those and then I'll come back before you and then we'll finish the thing." The judge then said that "the record will reflect that the supplemental admonitions to defendant for sex offender registration requirements have been read by the translator...."

### Motion for New Trial

Garcia filed a motion for new trial arguing that his waiver of appeal had not been knowing and voluntary because "his comprehension of the English language and American judicial system was insufficient." He also claimed that he received ineffective assistance of counsel at trial, and he claimed generally that the verdict was contrary to the law and the evidence. A hearing was held on the motion on September 28, 2001.

At the hearing, Garcia's sister-in-law testified that Garcia does not speak English.

Aluizo testified that she was sworn in as the interpreter for this case. But she was not called upon to interpret the English-speaking testimony for Garcia. Rather, she interpreted Garcia's Spanish testimony for the jury. When asked why she did not simultaneously interpret the testimony for Garcia, she said, "I don't—I don't really remember why I didn't sit beside him. Normally I do. I sat at the probation table by the counselor table and—but I really don't know why I didn't sit beside him. I did tell [Montoya], Mr. Bishop's secretary, that normally I would sit beside the Defendant and I don't recall what she responded to me and, so, I just sat, you know, on the side table." She did not see Montoya interpreting for Garcia. And during punishment, she never translated what an appeal was, its importance, or possible appellate issues.

Montoya testified that Garcia always spoke Spanish and Bishop spoke English so she translated for them. But she did not perform any type of interpretation for

Garcia during the trial. She sat in between Garcia and Bishop. Nobody instructed her to translate the witnesses' testimony for Garcia. She didn't do it because she was "afraid that I would be called down; and I didn't want to be called down." She was afraid a translation would disrupt the proceedings. Nobody else translated for Garcia. Before this case she had never been called upon to sit during a trial and give an ongoing translation, and she was not sworn in as an interpreter in this case. Garcia did not realize that he had been found guilty until they left the courtroom. Montoya told him he had been found guilty in the stairway outside the courtroom, and he was surprised and shocked.

Bishop testified that he speaks very little Spanish and Garcia speaks even less English. They had an interpreter every time they spoke. There was no translation by Montoya during trial. Bishop never advised Garcia that he had a right to an interpreter. Garcia could not understand the victim's testimony and therefore could not assist Bishop. Garcia did not understand that he had been found guilty until after the trial. Bishop never explained to Garcia what an appeal was. On cross-examination, Bishop admitted that Montoya had sat in between him and Garcia, and he could have asked her a question to ask Garcia, but he did not avail himself of this. He admitted that he never objected to the court or requested a translation for Garcia.

Garcia testified with the aid of an interpreter. The "clerk's worksheet" for the motion for new trial hearing states, "Rosario Rivera Interpreter," and states, "Presario Rivera translating to Defen." Garcia testified that nobody translated the trial for him and he did not understand any of the English testimony. He had no idea that he had a right to a translator and

never told anyone that he did not want a translator.

After that hearing, the judge made a remark which he put on the record during the next hearing. On October 8, 2001, the hearing scheduled for argument on the motion, the judge said the following:

Mr. Davis had talked to me about a remark that I had made after our last hearing, that was in the presence of Mr. Davis and the prosecutor, that ... I think I said something to the effect that at some point in the trial I had happened to notice that Mr. Ken Bishop— he was seated over there at counsel table, on the inside; and then, [Montoya] was next; and then, the defendant and then [Aluizo], I think was on the outside. And sometime during the trial, I noticed that the testimony was not being translated. At what stage of the trial, seems like it was pretty well into the trial ... it would have been sometime in the latter part or middle or two-third—I don't remember when—of the guilt-innocence stage. And I had mentioned to Mr. Davis that I don't recall what—who was testifying, who's testimony was significant testimony or insignificant testimony; but just don't recall. But I thought—I didn't remember whether I had remarked to anybody about it or not. If I did remark on the record, I guess it would be eventually on the record somewhere.

Defense counsel then urged a new trial due to the lack of translation and ineffective assistance of counsel. Counsel argued that the lack of translation violated, among other things, his client's Sixth Amendment right to confront the witnesses against him. The State responded that confrontation clause violations must be raised at trial.

The trial judge denied Garcia's motion for new trial. He noted that a written

motion had never been filed for an interpreter—only an oral motion. The judge also noted that there was an oath in the record that Aluizo would interpret, but that was in response to the State's request for an interpreter. The judge considered the fact that the ultimate issue in the case was whether there was sexual contact, and that issue was fully explored at trial. The judge concluded by recognizing that an interpreter had been sworn, but "Bishop had two Spanish-speaking assistants with him flanking [Garcia] at the time of trial and during the entire time of the trial." Finally, the judge concluded that Garcia had not knowingly and intelligently waived his right to appeal.

## Court of Appeals

On appeal to the Court of Appeals, Garcia argued that the lack of translation during his trial violated, among other things, the Sixth Amendment's Confrontation Clause. The State responded that Garcia failed to preserve error and any error would be harmless.

The Court of Appeals, in a memorandum opinion, stated that "if there is evidence an interpreter was present and available to help the defendant, a trial court does not err in failing to appoint one." [1] The court said that in this case, Bishop's legal assistant was fluent in both English and Spanish and sat next to Garcia during the trial.[2]

The Court concluded that Garcia "had a translator available but did not make use of her," and as a result, the trial court did not err in failing to appoint a second interpreter.[3]

We granted all four grounds of Garcia's petition for discretionary review. The first ground asks whether "a Mexican citizen who speaks and understands little or no English [can] be tried without benefit of translation, without knowledge he had a right to translation, and without affirmative waiver of the right to have the proceedings translated" under the federal constitution. Because of our resolution of this ground, we need not reach the remaining grounds.

## Analysis

■■■■ The Sixth Amendment to the Constitution guarantees an accused in a criminal prosecution the right to be confronted with the witnesses against him.[4] One of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom during his trial.[5] The right to be present includes the right to understand the testimony of the witnesses.[6] This is because, as Professor Wigmore notes, "no situation is more full of anguish than that of an innocent accused who cannot understand what is being testified against

1. *Garcia v. State,* No. 14–01–00949–CR, slip op. at 2, 2002 WL 31525586 (Tex.App.-Houston [14th], November 14, 2002) (not designated for publication).

2. *Ibid.*

3. *Ibid.*

4. U.S. Const. Amend. VI; *Davis v. Alaska,* 415 U.S. 308, 315, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

5. *Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970). *See also United*

States v. Gagnon, 470 U.S. 522, 526, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985).

6. *Baltierra v. State,* 586 S.W.2d 553, 556–57 (Tex.Crim.App.1979). *See also Luu v. People,* 841 P.2d 271, 273 n. 3 (Colo.1992); *State v. Heredia,* 253 Conn. 543, 754 A.2d 114, 122 (2000); *Martinez Chavez v. State,* 534 N.E.2d 731, 737 (Ind.1989); *State v. Calderon,* 270 Kan. 241, 245, 13 P.3d 871 (Kan.2000); 5 John W. Wigmore, Evidence § 1393 (Chadbourn Rev. Ed.1974).

him." [7] We have previously acknowledged that providing an interpreter to an accused who does not understand English is required by the Confrontation Clause.[8] Indeed, we long ago recognized the prevalence of this particular problem in our state:

> [W]e know that in this State, especially along the Rio Grande border, our citizenship is comprised of Latin Americans who speak and understand only the Spanish language. These citizens, as also nationals of the Republic of Mexico (which was the status of appellant), when brought before the courts of this State charged with crimes against the laws of this State, are entitled to be tried according to the Constitution and laws of this State. This, of necessity, means they are entitled to be confronted by the witnesses under the same conditions as apply to all others. Equal justice so requires. The constitutional right of confrontation means something more than merely bringing the accused and the witness face to face; it embodies and carries with it the valuable right of cross-examination of the witness. Unless appellant was in some manner, either through his counsel or an interpreter, afforded knowledge of the testimony of the witness, the right of cross-examination could not be exercised by him.[9]

The United States Supreme Court has also recognized that the right to confrontation and the right to be present at one's trial extend to foreign nationals.[10]

The Arizona Supreme Court explains that being present at a trial without understanding the language of the witnesses "would be as though a defendant were forced to observe the proceedings from a soundproof booth or seated out of hearing at the rear of the courtroom, being able to observe but not comprehend the criminal processes whereby the state had put his freedom in jeopardy." [11] And the United States Court of Appeals for the First Circuit notes that "[t]he right to an interpreter rests most fundamentally ... on the notion that no defendant should face the Kafkaesque [12] spectre of an incomprehensible ritual which may terminate in punishment." [13] Or as Judge Ferguson of the Ninth Circuit has said, "presence can have no meaning absent comprehension." [14]

The leading case in this area, and a case strikingly similar to this one, is *United States ex rel. Negron v. New York*.[15] There, the Second Circuit affirmed the

7. WIGMORE, *supra* note 6.

8. *See Baltierra*, 586 S.W.2d at 556–59; *Ex Parte Marez*, 464 S.W.2d 866, 867 (Tex.Crim. App.1971).

9. *Garcia v. State*, 151 Tex.Crim. 593, 601, 210 S.W.2d 574, 580 (1948). *See also Baltierra*, 586 S.W.2d at 557.

10. *Wong Wing v. United States*, 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140 (1896).

11. *State v. Natividad*, 111 Ariz. 191, 526 P.2d 730, 733 (1974).

12. *See* FRANZ KAFKA, THE TRIAL (Penguin 1953).

13. *United States v. Carrion*, 488 F.2d 12, 14 (1st Cir.1973). *See also United States v. Quesada Mosquera*, 816 F.Supp. 168, 173 (E.D.N.Y.1993); *Ko v. United States*, 722 A.2d 830, 834 (D.C.1998); *People v. Escalante*, 256 Ill.App.3d 239, 194 Ill.Dec. 580, 627 N.E.2d 1222, 1228 (1994); *Martinez v. State*, 449 N.E.2d 307, 309 (Ind.App.1983); *State v. Lopes*, 805 So.2d 124, 126 n. 2 (La.2001); *Commonwealth v. Garcia*, 379 Mass. 422, 399 N.E.2d 460, 470 (1980); *State v. Woo Won Choi*, 55 Wash.App. 895, 781 P.2d 505, 508 (1989); *State v. Neave*, 117 Wis.2d 359, 344 N.W.2d 181, 187 (1984).

14. *Tejeda–Mata v. I.N.S.*, 626 F.2d 721, 728 (9th Cir.1980) (Ferguson, J., dissenting).

15. 434 F.2d 386 (2d Cir.1970). *See also Baltierra*, 586 S.W.2d at 556, 559.

trial court's grant of habeas relief due to Negron's being tried without an interpreter. The government did not dispute that Negron understood no English, counsel spoke no Spanish, and there was no translation during trial. In granting habeas relief, the court noted that "most of the trial must have been a babble of voices"[16] to Negron. The court concluded that, "regardless of the probabilities of his guilt, Negron's trial lacked the basic and fundamental fairness required by the due process clause of the Fourteenth Amendment."[17] As the court explained, "Negron deserved more than to sit in total incomprehension as the trial proceeded."[18]

In this case, as in *Negron,* the State does not dispute that Garcia does not speak English and there was no translation during trial. Indeed, it concedes in its brief that at the hearing on the motion for new trial, Garcia "established that he does not speak English and did not receive simultaneous translation of the witnesses' testimony." Garcia, like Negron, sat in "total incomprehension"[19] of his trial. He understood almost no English, and all of the witnesses but one testified in English. He received no translation of the testimony. To Garcia, like Negron, the trial must have been "a babble of voices."[20] Garcia experienced exactly what the Sixth Amendment protects against.

*No Interpreter v. Ineffective Interpreter*

■ Despite this, the State argues that Garcia was not actually deprived of an interpreter at all. Instead, he had an interpreter—Montoya—who simply did not interpret. According to the State, the judge acknowledged the presence of Montoya as Garcia's interpreter both during voir dire and at the beginning of trial. So the State contends that Garcia's actual claim in this appeal is that he had an ineffective interpreter, not that he was denied an interpreter. And since Garcia's claim concerns an ineffective interpreter, the State continues, Garcia was required to preserve the error by objecting at trial.

The State's characterization of the facts is not entirely accurate. Montoya was not even implicitly recognized as an interpreter during voir dire. On the contrary, the record reflects that Aluizo, not Montoya, was "duly sworn as English/Spanish interpreter by Deputy District Clerk" at that hearing.

As for trial, it is true that the judge told the jury at the beginning of trial that Montoya "translates pretty frequently in the courts, so she's hired by the Court." But Montoya testified at the hearing on the motion for new trial that she did not perform any type of interpretation for Garcia during the trial. Nobody instructed her to translate the witnesses' testimony for Garcia, and she did not do so. Indeed, she had never once been called upon to sit during a trial and give an ongoing translation, and she was not sworn in as an interpreter in this case.

The fact that Montoya was bilingual and sat next to Garcia did not automatically elevate her to the status of courtroom

---

16. *Negron,* 434 F.2d at 388. *See also People v. Aguilar,* 35 Cal.3d 785, 200 Cal.Rptr. 908, 677 P.2d 1198, 1204 (1984); *People v. Avila,* 797 P.2d 804, 805 (Colo.App.1990); *Ko,* 722 A.2d at 834; *Martinez,* 449 N.E.2d at 309; *State v. Karaarslan,* 262 N.J.Super. 123, 619 A.2d 1346 (1993).

17. *Negron,* 434 F.2d at 389.

18. *Id.* at 390. *See also United States v. Si,* 333 F.3d 1041, 1042 (9th Cir.2003); *Escalante,* 194 Ill.Dec. 580, 627 N.E.2d at 1227; *Neave,* 344 N.W.2d at 187.

19. *Negron,* 434 F.2d at 390.

20. *See id.* at 388.

interpreter, regardless of the judge's statements to the jury. "One is not necessarily competent to translate legal proceedings because he or she is bilingual."[21] On the contrary, "[c]ourtroom interpretation is a sophisticated art, demanding not only a broad vocabulary, instant recall, and continuing judgment as to the speaker's intended meaning, but also the ability to reproduce tone and nuance, and a good working knowledge of both legal terminology and street slang."[22]

We disagree with the State. Garcia is not complaining about the effectiveness of Montoya as an interpreter because Montoya was not his court interpreter. She was not sworn in by the court to interpret the trial for Garcia, she was not told to interpret the trial for Garcia, and she did not interpret the trial for Garcia. Instead, Garcia is complaining that he was denied his right to confrontation because the proceedings were not translated for him.

### Waiver

 Nevertheless, we still must address the State's contention that Garcia waived error in his failure to object at trial to the lack of a translation. There is support for the State's contention that confrontation rights generally, and the right to an interpreter specifically, can be waived. We recognized that at least as far back as 1948.[23] And we repeated it in the interpreter/confrontation cases that followed, through 1971.[24] But in 1979 in *Baltierra*, we went a step further. There we explained that, although the right to an interpreter can be waived, it is not deemed waived if the trial court is aware "that an accused does not speak and understand the English language."[25] The State concedes in its brief that *Baltierra* "provides an exception to the objection requirement when the trial court is aware that an accused does not speak or understand English."

We elaborated on the *Baltierra* exception the following year in *Briones v. State*.[26] That case, unlike *Baltierra*, involved a guilty plea. We noted that the defendant in *Briones*, as part of his plea, had been informed in Spanish of his right to confrontation and he had waived that right. We concluded that his waiver was "voluntarily and intelligently entered"[27] and was "an intentional relinquishment or abandonment of a known right."[28] And we recognized that *Briones* was different from *Baltierra* and *Ex parte Nanes*[29] because, in those cases, the defendants pleaded not guilty and did not waive their rights to confrontation. They "could not

---

21. Virginia E. Hench, *What Kind of Hearing? Some Thoughts on Due Process for the Non-English-Speaking Criminal Defendant*, 24 T. MARSHALL L.REV. 251 (1999), *citing Attorneys Guide to the Use of Court Interpreters, With An English and Spanish Glossary of Criminal Law Terms*, 8 U. CAL. DAVIS L.REV. 471, 479 (1975).

22. *Id.*, citing Sanders, *Libertad and Justice for All: A Shortage of Interpreters is Leaving the Courts Speechless*, TIME MAGAZINE 65 (May 29, 1989), and *Attorneys Guide to the Use of Court Interpreters, With An English and Spanish Glossary of Criminal Law Terms, supra* note 21.

23. *Garcia*, 210 S.W.2d at 579.

24. *See Field v. State*, 155 Tex.Crim. 137, 232 S.W.2d 717, 718 (App.1950) (op. on reh'g); *Marez*, 464 S.W.2d at 867.

25. *Baltierra*, 586 S.W.2d at 559.

26. 595 S.W.2d 546 (Tex.Crim.App.1980).

27. *Briones*, 595 S.W.2d at 548.

28. *Ibid.*

29. 558 S.W.2d 893 (Tex.Crim.App.1977).

fully exercise those rights because they did not understand the English language."[30]

Our leading error-preservation case today was handed down thirteen years after *Briones*. In *Marin v. State*,[31] we explained that "our system may be thought to contain rules of three distinct kinds: (1) absolute requirements and prohibitions; (2) rights of litigants which must be implemented by the system unless expressly waived; and (3) rights of litigants which are to be implemented upon request."[32]

Rights contained within the last category, we said, are subject to procedural default if the litigant does not request them at trial. The "litigant's failure to speak up" is enough to render the right forfeited. But rights in the second category hand "do not vanish so easily. Although a litigant might give them up and, indeed, has a right to do so, he is never deemed to have done so in fact unless he says so plainly, freely, and intelligently, sometimes in writing and always on the record."[33] Regarding these rights, "the judge has an independent duty to implement them absent an effective waiver by him. As a consequence, failure of the judge to implement them at trial is an error which might be urged on appeal whether or not it was first urged in the trial court."[34]

The Waco Court of Appeals recently concluded that the right to an interpreter is a category-two *Marin* right—a right that must be implemented by the system unless expressly waived.[35] This conclusion makes sense for two reasons.

First, placing the right to an interpreter in *Marin's* second category is a logical extension of our caselaw on the subject.

Before *Marin*, we had concluded that the right to an interpreter could be waived, but that it would not be deemed waived if the trial judge was aware that the defendant had a language problem. In other words, if the judge is aware of the defendant's language barrier, the judge has an independent duty to ensure that the proceedings are interpreted for the defendant, absent the defendant's knowing and intelligent waiver. A category-two placement is consistent with our pre-*Marin* caselaw.

Additionally, requiring the right to an interpreter to be implemented unless waived makes sense given the nature of the right. It would be illogical to require a non-English-speaking defendant to assert his right to an interpreter in a language he does not understand when he may very well be unaware that he has the right in the first place. The *Negron* court said it well:

> Nor are we inclined to require that an indigent, poorly educated Puerto Rican thrown into a criminal trial as his initiation to our trial system, come to that trial with a comprehension that the nature of our adversarial processes is such that he is in peril of forfeiting even the rudiments of a fair proceeding unless he insists upon them. Simply to recall the classic definition of a waiver—"an intentional relinquishment or abandonment of a known right,"—is a sufficient answer to the government's suggestion that Negron waived any fundamental right by his passive acquiescence in the grinding of the judicial machinery and his failure to affirmatively assert the right. For all that appears, Negron, who was

---

30. *Briones,* 595 S.W.2d at 548.

31. 851 S.W.2d 275 (Tex.Crim.App.1993).

32. *Id.* at 279.

33. *Id.* at 280.

34. *Ibid.*

35. *See Guerrero v. State,* 2003 Tex.App. LEXIS 6443 *8, 2003 WL 21815380 *3 (Tex.App.-Waco, July 23, 2003).

clearly unaccustomed to asserting "personal rights" against the authority of the judicial arm of the state, may well not have had the slightest notion that he had any "rights" or any "privilege" to assert them.[36]

The *Negron* court pointed out that in *Pate v. Robinson*,[37] the Supreme Court of the United States held that "[w]here the evidence raises a 'bona fide doubt' as to a defendant's competence to stand trial, the judge on his own motion must impanel a jury and conduct a sanity hearing" pursuant to Illinois statutes. The Supreme Court also recognized in *Pate* that "it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently 'waive' his right to have the court determine his capacity to stand trial."[38]

In *Negron,* the court concluded that the same is true when it appears to the trial court that the defendant has a language disability. The court said that "[t]he least we can require is that a court, put on notice of a defendant's severe language difficulty, make unmistakably clear to him that he has a right to have a competent translator assist him, at state expense if need be, throughout his trial."[39] The First Circuit agrees, placing the burden squarely on the trial court's shoulders. In *Carrion,* the court stated that "[the trial court should] make unmistakably clear to a defendant who may have a language difficulty that he has a right to a court-appointed interpreter if the court determines that one is needed, and, whenever put on notice that there may be some significant language difficulty, the court should make such a determination of need."[40]

■ We conclude that, when a trial judge is aware that the defendant has a problem understanding the English language, the defendant's right to have an interpreter translate the trial proceedings into a language which the defendant understands is a category-two *Marin* right. In these circumstances, the judge has an independent duty to implement this right in the absence of a knowing and voluntary waiver by the defendant. The judge may become aware of the defendant's language problem either by being informed of it by one or both parties or by noticing the problem *sua sponte.*

■ In this case, the record reflects that at trial the judge was aware that Garcia needed a translator. The pretrial proceedings were translated for Garcia. Defense counsel discussed Garcia's language difficulty during voir dire. Garcia himself testified that he had been unable to understand the complainant's testimony. And the judge admitted on the record that at "some point" during the trial he had become aware that the proceedings were not being translated for Garcia. Since the judge was aware that Garcia had difficulty understanding English, the judge was required to ensure that the trial proceedings were translated into a language which Garcia could understand, absent an effective waiver by Garcia. And Garcia did not knowingly or voluntarily waive his right to an interpreter. Garcia's Sixth Amendment right to confront the witnesses against him was violated.

## Conclusion

"They deafened my ears with their gab-

---

**36.** *Negron,* 434 F.2d at 390 (internal citations omitted).

**37.** 383 U.S. 375, 385, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966).

**38.** *Id.* at 384.

**39.** *Negron,* 434 F.2d at 390–91.

**40.** *Carrion,* 488 F.2d at 15.

ble."[41] So said Kafka's Josef K. of his trial. Garcia might well make the same assertion. Like Negron, Garcia "deserved more than to sit in total incomprehension as the trial proceeded."[42] We sustain Garcia's first ground for review and dismiss the remaining grounds. We reverse the Court of Appeals' judgment and remand the case to that court for an assessment of harm.[43]

KELLER, P.J., filed a concurring opinion in which WOMACK, J., joined.

KELLER, P.J., concurring in which WOMACK, J., joined.

The right to have proceedings interpreted[1] finds a ready analogy in the right to be competent at one's own trial. Whether a defendant's failure to understand the proceedings or assist in his defense[2] is caused by a mental defect or a language barrier, the outcome is largely the same: a trial in which the defendant lacks the ability to participate in a meaningful way. The two situations are also alike in that they are not the norm. Just as defendants are presumed to be competent,[3] they should be presumed to understand the English language. Our past cases on language barriers have treated the issue in such a manner, requiring it to be raised in some fashion before a duty devolves upon the trial court to conduct an inquiry.[4] This treatment distinguishes the right to have proceedings interpreted from other waivable-only rights, such as the right to counsel and the right to a jury trial. These latter are implemented as a matter of course, unless the defendant takes affirmative action to prevent such implementation.

While competency and language proficiency are similar in several respects, there are also differences. An incompetent person cannot be tried,[5] but the trial court can compensate for a language barrier by appointing an interpreter. Also, incompetency to stand trial cannot be waived because an incompetent person cannot, by definition, intelligently waive his rights, but the right to have proceedings interpreted can be relinquished through a knowing and intelligent waiver.[6]

Accordingly, the right to have proceedings interpreted should be treated like competency to stand trial in some respects and like waivable-only rights in other respects. I would hold as follows: (1) The trial court has no duty to inquire about the defendant's ability to understand English until the issue is raised in some fashion. The issue is raised if one of the parties raises it or if any source of information indicates that the defendant's grasp of the English language is inadequate.[7] The trial court should address the issue even if it is raised late, such as during trial or in a motion for new trial, provided that, in the latter situation, the defendant has properly

---

41. KAFKA, *supra* note 12, at 51.

42. *See Negron,* 434 F.2d at 390.

43. *See* Rule 44.2(a); *Delaware v. Van Arsdall,* 475 U.S. 673, 684, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986).

1. While this right flows from several provisions in United States and Texas Constitutions, it is also protected by statute. *See* TEX. CODE CRIM. PROC., Art. 38.30(a).

2. *See* TEX. CODE CRIM. PROC., Art. 46B.003(a).

3. *See* Art. 46B.003(b).

4. *See Baltierra v. State,* 586 S.W.2d 553, 559 (Tex.Crim.App.1979).

5. Article 46B.071.

6. *Baltierra, supra.*

7. This requirement parallels Art. 46B.004.

raised the issue by affidavit as required by caselaw.[8] (2) Once the issue is raised, the defendant must prove by a preponderance of the evidence his need for the proceedings to be interpreted. Unless the defendant wishes to waive his right to an interpreter, the trial court should permit the State to question the defendant's attorney concerning the defendant's ability to understand the English language. The lawyer-client privilege would be waived under those circumstances for the limited purpose of resolving the language proficiency question.[9] In reviewing whether the defendant has met his burden of proof, an appellate court should give due deference to the trial court's resolution of fact questions, especially those that turn upon credibility and demeanor.[10] (3) If it is shown that an interpreter is needed, one should be provided unless the defendant knowingly and intelligently waives such.

Here, appellant's language barrier became manifest at trial and was specifically raised by appellant in a motion for new trial. The parties agree that appellant proved he needed an interpreter to understand the proceedings. And he did not waive his right to one. Under these circumstances, I agree with the Court that appellant was deprived of his right to have the proceedings interpreted.

---

8. *Wallace v. State,* 106 S.W.3d 103, 108 (Tex. Crim.App.2003).

9. *See* TEX. R. EVID. 503(d)(1)(crime-fraud exception).

10. *See Guzman v. State,* 955 S.W.2d 85, 89 (Tex.Crim.App.1997).