

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00228-CR

JAMES PANCHOL                                              APPELLANT

V.

THE STATE OF TEXAS                                              STATE

----------

## FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

Appellant James Panchol appeals his conviction for aggravated assault with a deadly weapon. In five issues, Appellant contends that the trial court abused its discretion by failing to appoint an interpreter and by admitting inadmissible hearsay testimony into evidence, that his guilty plea was involuntary, and that he received ineffective assistance of counsel. We overrule

---

[1]Tex. R. App. P. 47.4.

Appellant's issues and affirm the trial court's judgment. *See* Tex. R. App. P. 43.2(a).

## I. BACKGROUND

On July 27, 2009, Appellant stabbed a delivery woman for no apparent reason. The delivery woman was able to escape. Two police officers—Officer Kenneth James Simmons and Officer Phyllis Reese—arrived at the scene shortly thereafter. Appellant would not drop the knife he was holding, and Reese attempted to subdue him with a Taser. Appellant "ripped" the Taser prongs out and charged after Reese with the knife. Simmons shot Appellant before he could stab Reese.

Appellant was indicted for aggravated assault with a deadly weapon and for aggravated assault on a public servant with a deadly weapon. *See* Tex. Penal Code Ann. § 22.02 (West 2011). On September 3, 2009, Appellant's counsel filed a motion to appoint an investigator, which the trial court granted. The same day, Appellant's counsel filed a motion requesting the appointment of a "volunteer investigative interpreter" to assist counsel and his investigator prepare for trial because Appellant, a citizen of Sudan, spoke Dinkha, a tribal dialect in Sudan. Counsel stated that it was difficult to communicate with Appellant "due to his physical and mental problems" and because "[h]is native language is tribal Dinkha." The record does not reflect that counsel presented the motion to the trial court or that the motion was ever ruled upon.

On October 30, 2009, the trial court entered an agreed order adjudging Appellant mentally incompetent to stand trial and ordered him transferred to a mental-health hospital for "treatment toward the specific objective of the defendant attaining competency to stand trial." Tex. Code Crim. Proc. Ann. art. 46B.073(b) (West Supp. 2012). On April 14, 2010, the hospital notified the trial court that Appellant had been medicated with antipsychotic medications and was competent to stand trial. *See id.* art. 46B.079(b) (West Supp. 2012).

Appellant then gave notice that he intended to assert the affirmative defense of insanity. *See* Tex. Penal Code Ann. § 8.01 (West 2011). Appellant also requested "additional funds" to pay an expert regarding his insanity defense. Appellant stated that the additional funds were needed partially because of his "limited ability to communicate in English." The trial court granted the motion.

On May 11, 2012, Appellant pleaded guilty to the charge of aggravated assault with a deadly weapon. Although the parties did not agree to a recommended sentence for the charge, Appellant agreed to waive his right to assert the affirmative defense of insanity in exchange for the State's withdrawal of the charge for aggravated assault on a public servant with a deadly weapon. Appellant filed an application for community supervision. A jury was selected and heard punishment evidence regarding the charge of aggravated assault with a deadly weapon. The jury was charged that Appellant had requested community supervision and was informed of the circumstances under which it could recommend community supervision. The jury assessed his punishment at

3

twenty years' confinement, which was the maximum sentence allowable. *See id.* § 12.33(a) (West 2011).

Appellant filed a motion for new trial arguing that (1) "[t]he verdict in this case is contrary to the law and the evidence"; (2) the "sentence in this case is disproportionate to the acts of [Appellant] and amounts to cruel and unusual punishment"; (3) counsel was ineffective by allowing Appellant, who was "legally incompetent," to plead guilty; and (4) counsel was ineffective by waiving Appellant's insanity defense. The motion, which counsel properly presented to the trial court, was overruled by operation of law. *See* Tex. R. App. P. 21.6, 21.8(c). Appellant filed a notice of appeal and now raises five issues he argues mandate reversal of the trial court's judgment.

## II. TRIAL COURT DISCRETION

In his first two issues, Appellant argues that the trial court abused its discretion and, thus, reversibly erred by failing to appoint an interpreter for Appellant and by allowing the State to introduce hearsay testimony. Both of these issues are reviewed for an abuse of discretion; thus, we will not second guess the trial court if its decision lies within the zone of reasonable disagreement. *See Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008) (admission of hearsay evidence); *Garcia v. State*, 210 S.W.2d 574, 600 (Tex. Crim. App. 1948) (determination of whether interpreter necessary); *Abdygapparova v. State*, 243 S.W.3d 191, 201 (Tex. App.—San Antonio 2007, pet. ref'd) (same). We must uphold the trial court's ruling if it is correct on any

4

theory of law applicable to the case. *De La Paz v. State*, 279 S.W.3d 336, 344 (Tex. Crim. App. 2009).

## A. INTERPRETER

Appellant first asserts that because it was clear he could not understand English, the trial court erred by failing to appoint an interpreter. Long before trial, Appellant's counsel filed a motion requesting the trial court to appoint a volunteer investigative interpreter who speaks Dinkha, a Sudanese tribal language, because "it is difficult to communicate effectively in English."[2] This motion was not ruled on. Trial counsel later asked for, and received, additional funds for Appellant's expert regarding the insanity defense partially based on the fact that Appellant had a limited ability to understand English.

During a pretrial hearing held the day before the punishment trial began, the trial court questioned Appellant and Appellant's counsel to determine if Appellant required an interpreter because it was "one of the things" that had "come to [the trial court's] attention." Counsel stated he did not believe an interpreter was necessary because Appellant "can understand what's going on." Counsel admitted, however, that "sometimes" he uses words Appellant does not understand but that rephrasing them for Appellant solves the problem. Indeed, the trial court noted that Appellant had a "very heavy accent." Appellant testified

---

[2]Appellant's original counsel volunteered his services to represent Appellant. Original counsel filed this motion on September 3, 2009. On February 23, 2011, original counsel filed a motion to withdraw, and the trial court appointed trial counsel for Appellant two days later.

that he reads and writes English "a little bit," but that he's "not good" at speaking English. Although Appellant affirmed he could understand counsel, he did not understand "everything." Counsel stated Appellant's writing was "coherent" and he "can make himself understood," although "it takes some time" to make sure Appellant "fully comprehend[s]." Appellant filed four pro-se motions in the trial court that demonstrated a facility with the English language; however, these motions were not prepared by Appellant, but by a fellow inmate.[3]

The trial court did not make an explicit ruling regarding Appellant's need for an interpreter, but immediately began inquiring into the voluntariness of Appellant's guilty plea. When the trial court admonished Appellant regarding the effects of his guilty plea and withdrawal of his insanity defense, Appellant sometimes responded appropriately but would have trouble understanding "long sentence[s]" with "too many words." At one point, Appellant contradicted himself and could not consistently understand the trial court's questions:

> THE COURT: Now, Mr. Panchol, at this time, however, you still have the right to have a jury trial on the full trial of the case, meaning that the jury gets to hear whether or not you committed the offense, and the State must prove their case beyond a reasonable doubt by legal and competent evidence, meaning that the jury has to be convinced beyond a reasonable doubt that you committed the offense.
>
> You understand that the insanity defense, that same paperwork that I discussed regarding Dr. Altman, indicates the

---

[3]Appellant claimed he had written one of the motions, but that motion is in the same handwriting and includes the same notation as the other motions, which show they were drafted by a fellow inmate.

6

possibility that you could have claimed an insanity defense. You are waiving that right. Do you understand?

THE DEFENDANT: I do not understand that because the long one one - - I don't understand long sentence.

THE COURT: All right. I talked in too many words to you?

THE DEFENDANT: Yeah, too many words.

THE COURT: All right. You understand that there are - - there's the possibility of using certain defenses during a trial to - - so that the jury can say you are excused from that criminal behavior, meaning that you didn't - - you are not going to be held responsible for it. Do you understand?

THE DEFENDANT: Yes, sir.

. . . .

THE COURT: All right. Now, by entering into this plea, you're waiving any right or - - or claim of self-defense [sic]. You cannot claim that any longer.

THE DEFENDANT: Yes, sir.

. . . .

THE COURT: Is that your wish? Is that what you want to do?

THE DEFENDANT: No.

THE COURT: Okay. Meaning that you don't want to proceed forward; you want to be able to claim the self-defense of insanity?

THE DEFENDANT: Yeah.

THE COURT: You do want to claim insanity?

THE DEFENDANT: No, no, I don't want to - -

THE COURT: Okay. Well, you just answered something to the contrary just a moment ago.

7

Do you understand what you just said was - - it doesn't reconcile - - it doesn't agree with one another? What you said didn't agree.

THE DEFENDANT: What?

THE COURT: Okay. A moment ago, you just told me that you want to waive a trial and not claim self-defense - - strike that. Claim insanity. All right?

And by doing so, you're asking the jury to simply assess your punishment. I'm trying to make sure that you understand that by you entering into this agreement, you're waiving that claim that you should not be held criminally responsible. Do you understand?

THE DEFENDANT: Yes, sir.

THE COURT: Okay. Do you have any questions about that?

THE DEFENDANT: No.

. . . .

THE COURT: Okay. Is this your voluntary decision to plead guilty?

THE DEFENDANT: Huh?

THE COURT: Is this a voluntary decision on your part to plead guilty to the offense?

THE DEFENDANT: Yeah.

. . . .

THE COURT: All right. And are you pleading guilty freely and voluntarily?

THE DEFENDANT: What?

THE COURT: Voluntarily. Freely. Nobody is forcing you to plead guilty?

THE DEFENDANT: Nobody, nobody.

The trial court accepted Appellant's guilty plea, and the subsequent trial on punishment was conducted without an interpreter. We assume Appellant's counsel did not speak Dinkha.

It is axiomatic that an accused has the right to be present at his trial and confront the witnesses brought against him. *See* U.S. Const. amend. VI; *Davis v. Alaska*, 415 U.S. 308, 315, 94 S. Ct. 1105, 1110 (1974); *Illinois v. Allen*, 397 U.S. 337, 338, 90 S. Ct. 1057, 1058 (1970). These constitutional rights include the right to understand the testimony of the witnesses; thus, an accused who does not understand English must be provided an interpreter. *See Garcia v. State*, 149 S.W.3d 135, 140–41 (Tex. Crim. App. 2004). Texas has codified this right. *See* Tex. Code Crim. Proc. Ann. art. 38.30 (West Supp. 2012); *accord* 28 U.S.C.A. § 1827(d) (West 2006) (federal Court Interpreters Act). The right to an interpreter must be implemented by the trial court sua sponte unless expressly waived. *See Garcia*, 149 S.W.3d at 144; *Fonseca v. State*, 163 S.W.3d 98, 100 (Tex. App.—Fort Worth 2005, pet. ref'd). Thus, if the trial court is "aware of the defendant's language barrier, the judge has an independent duty to ensure that the proceedings are interpreted for the defendant, absent the defendant's knowing and intelligent waiver." *Garcia*, 149 S.W.3d at 144. In such a situation, a defendant's failure to object to the absence of an interpreter does not forfeit his complaint. *Id.* at 143–45.

Although a defendant's waiver of the right to an interpreter must be express, the determination of whether a defendant needs an interpreter lies within the trial court's wide discretion. *See Baltierra v. State*, 586 S.W.2d 553, 556–57 (Tex. Crim. App. 1997); *Orellana v. State*, 381 S.W.3d 645, 657 (Tex. App.—San Antonio 2012, pet. ref'd). We defer to the trial court and its exercise of its discretion because the need for an interpreter depends on "a potpourri of factors" and because the trial court is in the best position to judge the defendant's English proficiency. *Orellana*, 381 S.W.3d at 657; *see Abdygapparova*, 243 S.W.3d at 202–03; *Aguilar Lamberto v. State*, No. 2-07-070-CR, 2008 WL 2168122, at *2 (Tex. App.—Fort Worth May 22, 2008, pet. ref'd) (not designated for publication); *Hernandez v. State*, 986 S.W.2d 817, 822 (Tex. App.—Austin 1999, pet. ref'd). The mere fact that an accused is fluent in another language does not, standing alone, warrant the appointment of an interpreter. *See Flores v. State*, 509 S.W.2d 580, 581 (Tex. Crim. App. 1974); *Abdygapparova*, 243 S.W.3d at 201; *Vargas v. State*, 627 S.W.2d 785, 787 (Tex. App.—San Antonio 1982, no pet.). Evidence that a person is capable of communicating in English on a day-to-day basis is sufficient to support a trial court's denial of an interpreter. *See Abdygapparova*, 243 S.W.3d at 201; *Simcoe v. State*, 268 S.W.3d 84, 87–88 (Tex. App.—Austin 2007, pet. ref'd).

Here, there was evidence that Appellant was capable of communicating in English and could do so on a day-to-day basis. Indeed, the evidence at punishment showed that Appellant had been in the United States since 2001 and

10

was attempting to get his GED.[4]  Further, when Reese testified that she tripped when Appellant came after her with a knife, Appellant interjected, "That's a lie."  It is doubtful that Appellant sat in "total incomprehension as the trial proceeded" if he was able to protest Reese's version of Appellant's attack.  *Garcia*, 149 S.W.3d at 142 (citing *United States ex rel. Negron v. New York*, 434 F.2d 386, 390 (2d Cir. 1970)).  Appellant's counsel reported no problems communicating with Appellant, which Appellant affirmed.  Further, Appellant was examined by a psychologist before trial and there is no indication that he was unable to participate meaningfully in the exam based on a language barrier.  Although the psychologist stated that Appellant had "[s]ome difficulty with communication," the psychologist was able to conduct an examination of Appellant, which was facilitated by the detailed personal information dating back to 1989 that Appellant related to the psychologist.

Although this evidence shows Appellant understood the proceedings, we are concerned that Appellant could not consistently understand the proceedings if "long sentence[s]" with "too many words" were used.  As the record shows, Appellant could understand if the statements were rephrased with smaller words or in shorter sentences.  But Appellant's counsel could not perform this service during the punishment trial as he was able to during the guilty-plea proceeding

---

[4]We may consider the entire record, including evidence introduced at punishment, in determining whether the trial court's failure to provide an interpreter was an abuse of discretion.  *See, e.g.*, *Abdygapparova*, 243 S.W.3d at 202; *Vargas*, 627 S.W.2d at 787.

11

because he was required to "direct [his] attention to acting as an advocate for [his] client rather than on rephrasing the testimony from the witness stand." *Abdygapparova*, 243 S.W.3d at 202. We are constrained by the applicable abuse-of-discretion standard of review, however, which allows for a finding of abuse only if the trial court's conclusion was outside the zone of reasonable disagreement and was, thus, arbitrary and capricious. *See Linton v. State*, 275 S.W.3d 493, 500, 503 (Tex. Crim. App. 2009); *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 926 (1993). As recited above, the trial court's decision to forego an interpreter was based on identifiable facts in the record. Because the denial was so supported, we must conclude that the trial court's ruling was not an abuse of discretion and overrule Appellant's first issue. *See Abdygapparova*, 243 S.W.3d at 203.

## B. HEARSAY

In his second issue, Appellant asserts that the trial court erred by allowing the State to introduce hearsay testimony. The State called Simmons as a witness and asked him about Appellant's reputation for being peaceful and law abiding, which Simmons stated was "not good." On cross-examination, Appellant's counsel asked Simmons whether he was "aware of any felony conviction [Appellant] had." Simmons answered, "No, sir, no convictions," but reaffirmed that his opinion of Appellant's reputation was based on "information that [he] received . . . from fellow officers that[] dealt with [Appellant] before." On redirect examination, the State elicited the fact that although Simmons had not

12

checked the criminal-history database to determine if Appellant had "ever been on a probation or anything like that"—which Simmons had agreed on cross-examination would have been a "good idea"—he reached his opinion about Appellant's reputation from speaking to several other police officers. Over Appellant's hearsay objection, Simmons affirmed that "other officers [had] violent confrontations with [Appellant]." As he did in the trial court, Appellant argues this testimony was inadmissible hearsay. *See* Tex. R. Evid. 802. The trial court determined that the testimony was admissible because Appellant had "opened the door."

### 1. Propriety of Admission

Again, we review the trial court's decision to admit this evidence over Appellant's hearsay objection for an abuse of discretion. Simmons's statements about Appellant's general reputation in the community qualified as exceptions to the hearsay rule. Tex. R. Evid. 803(21); *see House v. State*, 909 S.W.2d 214, 218 (Tex. App.—Houston [14th Dist.] 1995) ("A reputation witness'[s] testimony must be based on discussion with others about the defendant, or on hearing others discuss the defendant's reputation, and not just on personal knowledge."), *aff'd on other grounds*, 947 S.W.2d 251 (Tex. Crim. App. 1997). Further, general reputation evidence expressly is admissible at the punishment phase of trial: "[E]vidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, [and] an opinion

13

regarding his character." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2012); *see Erazo v. State*, 144 S.W.3d 487, 491 (Tex. Crim. App. 2004) ("Code of Criminal Procedure Article 37.07, Section 3(a) governs the admissibility of evidence during the punishment phase of a non-capital trial." (footnote omitted)). Therefore, Simmons's general reputation testimony was properly admitted at punishment over Appellant's hearsay objection. *See Spikes v. State*, No. 09-00-320-CR, 2002 WL 1478540, at *2 (Tex. App.—Beaumont July 10, 2002, no pet.) (not designated for publication).

But the State elicited testimony that went beyond general reputation evidence when Simmons agreed that other officers previously had "violent confrontations" with Appellant:

> General reputation is confined solely to what people generally think and state about it, and it is not permitted, on an examination of the witness in chief, to show specific acts, in order to show good or bad reputation; neither do we think it is permissible, on cross-examination, to show by the witness what he knows individually about specific or particular acts or conduct of the accused . . . .

*Prater v. State*, 284 S.W. 965, 966 (Tex. Crim. App. 1926). Case law creates an exception to the hearsay rule for general reputation evidence that is a synthesis of discussion in the community, but it does not allow for admission of testimony reflecting out-of-court statements of others that reflect unproven allegations of specific criminal acts when a proper hearsay objection is asserted. *See* Tex. R. Evid. 803(21); *Manning v. State*, 126 S.W.3d 552, 555–56 (Tex. App.—Texarkana 2003, no pet.); *Simpson v. State*, No. 01-96-00048-CR, 1998 WL

14

55269, at *3 (Tex. App.—Houston [1st Dist.] Feb. 12, 1998, pet. ref'd) (not designated for publication).

But when an accused produces evidence tending to create a false impression of his law-abiding behavior, he opens the door on his otherwise irrelevant past criminal history to rebut the false impression. *Hernandez v. State*, 351 S.W.3d 156, 159–60 (Tex. App.—Texarkana 2011, pet. ref'd). This evidence of specific bad acts must be related to the issue on which the door has been opened. *Turner v. State*, 4 S.W.3d 74, 79 (Tex. App.—Waco 1999, no pet.).

Here, Appellant elicited Simmons's testimony that Appellant had no prior criminal record. By doing so, Appellant opened the door to possible impeachment evidence showing that Appellant, indeed, had a criminal record.[5] The State's questioning of Simmons, however, went too far and asked about prior bad acts that Simmons had no independent knowledge of and did not relate to Appellant's record. This evidence was not mere general reputation evidence under article 37.07 but strayed into inadmissible extraneous bad acts that were not "shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible." Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1). We conclude that the "violent-

---

[5]In fact, evidence was later admitted that Appellant had assaulted a police officer in 2002, but had successfully served out his community-supervision sentence.

15

confrontation" evidence was inadmissible hearsay, which was erroneously admitted over Appellant's objection.[6]

## 2. Harm Analysis

Erroneous admission of evidence is nonconstitutional error that must be disregarded unless it affected the appellant's substantial rights. *See* Tex. R. App. P. 44.2(b); *Solomon v. State*, 49 S.W.3d 356, 365 (Tex. Crim. App. 2001). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). Conversely, an error does not affect a substantial right if we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Solomon*, 49 S.W.3d at 365. In making this determination, we review the record as a whole, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). We may also consider the jury instructions, the State's theory and any defensive theories, whether the State

---

[6]We note that if a defendant offers evidence of his suitability for community supervision, he opens the door to rebuttal evidence about specific bad acts that are relevant to deciding his suitability. *Summers v. State*, 942 S.W.2d 695, 697 (Tex. App.—Houston [14th Dist.] 1997, no pet.). However, Appellant did not admit evidence of his ability to serve a community-supervision term until after Simmons's violent-confrontation testimony, and Appellant's pre-trial application for community supervision did not so open the door. *See Tatum v. State*, 919 S.W.2d 910, 912 (Tex. App.—Fort Worth 1996, no pet.).

emphasized the error, closing arguments, and even voir dire, if applicable. *Id.* at 355–56.

The jury heard evidence of Appellant's attack on the delivery woman, his attempt to stab Reese, and Simmons's necessary resort to deadly force to stop Appellant even after Reese tasered Appellant. The delivery woman testified that she had to undergo physical therapy and still struggled with fear in performing her job. Simmons testified that Appellant's general reputation for being peaceful and law-abiding was "not good." The jury heard evidence that Appellant had been convicted before of assaulting a police officer, but that he had successfully served deferred adjudication community supervision. There was further evidence that Appellant was schizophrenic with paranoid delusions and would become violent and unpredictable if he failed to take his required medication. The State also elicited testimony that if Appellant was incarcerated, his medications would be provided to him and he would be monitored. Appellant stopped taking his medications shortly before his attack on the delivery woman and Reese. In its closing jury argument, the State argued that Appellant was a "ticking time bomb" and not suitable for community supervision but based its argument on the facts of the offense and Appellant's past failure to take his required medication. Simmons's testimony about Appellant's past violent confrontations with police officers was not emphasized.

We conclude that, in the context of the entire case against Appellant, the trial court's error in admitting the testimony in question did not have a substantial

17

or injurious effect on the jury's verdict and did not affect Appellant's substantial rights. *See King*, 953 S.W.2d at 271. Thus, we disregard the error and overrule issue two.

### III. INVOLUNTARY PLEA

In his third issue, Appellant asserts that the trial court erred in not sua sponte withdrawing Appellant's guilty plea based on Appellant's inability to understand the proceedings, which rendered his plea involuntary.

A trial court may not accept a guilty plea unless it appears that the defendant was mentally competent and entered the plea freely and voluntarily. *See* Tex. Code Crim. Proc. Ann. art. 26.13(b) (West Supp. 2012). When a defendant is properly admonished before entering his plea, a prima-facie showing of voluntariness is established, which shifts the burden to the defendant to show he pleaded guilty without understanding the consequences of his plea. *See Martinez v. State*, 981 S.W.2d 195, 197 (Tex. Crim. App. 1998).

Appellant does not argue that the trial court's admonishments were defective. Indeed, the trial court substantially complied with the statutory requirements before accepting Appellant's guilty plea. *See* Tex. Code Crim. Proc. Ann. art. 26.13(a), (c). Additionally, Appellant signed written plea admonishments, including a judicial confession, and affirmed that he signed it freely and voluntarily. Thus, Appellant must show that he was not aware of the consequences of his plea and was misled or harmed by the admonishments. *See id.* art. 26.13(c); *Martinez*, 981 S.W.2d at 197. This burden is a high one

18

that is difficult to meet in light of proper admonishments. *See Starks v. State*, 266 S.W.3d 605, 614 (Tex. App.—El Paso 2008, no pet.).

The record shows that Appellant was able to understand and answer the trial court's questions. He stated he understood each of the admonishments and had no questions. Appellant affirmed that his trial counsel previously had explained the consequences of his plea such that Appellant understood them and that he was pleading guilty voluntarily. Appellant has failed to meet his burden to show that he was misled or misinformed and unaware of the consequences of his plea. The evidence shows that Appellant was informed of his rights, understood his rights, freely waived those rights, and voluntarily entered his plea. *See Leon v. State*, 25 S.W.3d 841, 843–44 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd). We overrule issue three.

## IV. INEFFECTIVE ASSISTANCE OF COUNSEL

In his final two issues, Appellant contends his trial counsel was constitutionally ineffective. To establish ineffective assistance of counsel, the appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Davis v. State*, 278 S.W.3d 346, 352 (Tex. Crim. App. 2009); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). In other words, for a claim of ineffective assistance of counsel to succeed, the

19

record must demonstrate both deficient performance by counsel and prejudice suffered by the defendant. *Menefield v. State*, 363 S.W.3d 591, 592 (Tex. Crim. App. 2012). An ineffective-assistance claim must be "firmly founded in the record" and "the record must affirmatively demonstrate" the meritorious nature of the claim. *Id.* (quoting *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999)).

Direct appeal is usually an inadequate vehicle for raising an ineffective-assistance-of-counsel claim because the record generally is undeveloped. *Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813. This statement is true with regard to the deficient-performance prong of the inquiry when counsel's reasons for failing to do something do not appear in the record. *Menefield*, 363 S.W.3d at 593; *Thompson*, 9 S.W.3d at 813. To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005) (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593 (citing *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003)). If trial counsel is not given that opportunity, then the

20

appellate court should not find deficient performance unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Id.* (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), *cert. denied*, 537 U.S. 1195 (2003)).

## A. FAILURE TO OBJECT

Appellant contends that trial counsel was deficient for failing to object to the State's closing jury argument regarding Appellant's willingness to return to Sudan:

> I anticipate that the Defense is going to get up here and talk to you about how the Defendant wants to go back to Sudan, or he can go back to Sudan. Well, who's going to make him go? The government can't. Who's going to make him go back there? If you give him a short prison term or community supervision, no one can order him to go back there and just get out of our hair. The only way is to send him to prison.

The record is absolutely silent regarding counsel's reasons for not objecting to this argument. Counsel's failure to object is not so outrageous that we may conclude that no competent attorney would have failed to object, nor may we speculate as to counsel's reasons for failing to object. That being the case, Appellant has failed to show by a preponderance of the evidence that counsel was deficient. *See Cox v. State*, 389 S.W.3d 817, 819–20 (Tex. Crim. App. 2012); *Adighije v. State*, No. 12-09-00213-CR, 2010 WL 2638149, at *2–3 (Tex. App.—Tyler June 30, 2010, no pet.) (mem. op., not designated for publication); *Casillas v. State*, No. 05-04-00310-CR, 2005 WL 906134, at *4–5 (Tex. App.— Dallas Apr. 20, 2005, no pet.) (not designated for publication). The absence of a

record on this point mandates that his allegation would be more appropriately pursued in a post-conviction writ of habeas corpus to allow record development. *See Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); *Robinson v. State*, 16 S.W.3d 808, 810 (Tex. Crim. App. 2000). We overrule issue four.

## B. WAIVER OF INSANITY DEFENSE

In his final issue, Appellant argues trial counsel was ineffective by advising him to waive his insanity defense. Before trial, Appellant gave notice that he intended to assert the affirmative defense of insanity. *See* Tex. Penal Code Ann. § 8.01. The trial court authorized a psychologist to examine Appellant, who concluded that Appellant was mentally impaired at the time of the offense:

> At the time of the alleged offense, . . . [Appellant] suffered from a mental disease or defect which rendered him unable to appreciate the wrongfulness of his behavior. He was laboring under the substantial effects of an altered mood state, delusions, and hallucinations. Resultantly, he had extremely impaired judgment, reasoning, and impulse control due to his psychotic symptoms. . . . While it is difficult to establish a direct link between these psychotic symptoms and the behaviors of which he is accused, this examiner opines that he had very little capacity for reasoning about the wrongfulness of assaulting a woman and a police officer on the property of his apartment complex.

The trial court, when asked to accept Appellant's guilty plea and affirmative-defense waiver, asked Appellant's trial counsel whether he had discussed the psychologist's report with Appellant. Trial counsel averred he had discussed it with Appellant and explained the strategy behind the decision to waive the defense:

22

Your Honor, . . . we're going to announce a . . . plea bargain between the State and myself where we were not going to rely on the insanity defense, plead guilty to the first agg assault deadly weapon case; and the other case of the public servant is to be dismissed and just proceed to trial to the jury on punishment.

. . . .

. . . We've discussed the opinion of the doctor. We've discussed what happens if he was found not guilty by reason . . . of insanity, . . . the possible things that . . . could happen to him, . . . discussed the immigration situation, what is happening now in Sudan as opposed to many years ago, and the fact that a number of the fellow refugees that came with him have moved back, and that he tends to think that he would like to [go back to Sudan] too.

. . . .

. . . The fact that if he was found guilty of the public servant case and - - or not guilty by reason of insanity, he could possibly be in a mental institution for the rest of his life.

And he - - we've discussed all that, and based on all that, he - - and while you have read some of the stronger things in [the psychologist's] report, he also has some - - he gets there, and then he seems to back off some, if you know what I mean.

. . . .

. . . [W]hen . . . [the report] said [Appellant] was unable to appreciate the wrongfulness of his behavior, and then the next sentence he said he had extremely impaired judgment.

Now, you know, impairment doesn't mean incapable to me.

. . . .

. . . Impaired reasoning ability is a lot different than unable to reason.

Additionally, Appellant confirmed that he had reviewed the psychologist's report

with trial counsel, that he understood the report, and that he understood the

23

consequences of waiving his defense. Indeed, Appellant's desire to return to Sudan seemed to be the driving force behind the decision to waive his insanity defense. The preponderance of the evidence, therefore, reveals that trial counsel had valid strategic reasons for waiving the affirmative defense. Appellant has failed to show deficient performance by trial counsel. *See Rodriguez v. State*, 899 S.W.2d 658, 666 (Tex. Crim. App.), *cert. denied*, 516 U.S. 946 (1995); *Porras v. State*, No. 01-86-0469-CR, 1987 WL 12321, at *2 (Tex. App.—Houston [1st Dist.] June 4, 1987, no pet.) (not designated for publication); *cf. Garcia v. State*, No. 13-11-00547-CR, 2013 WL 865411, at *6–7 (Tex. App.—Corpus Christi Mar. 7, 2013, no pet.) (mem. op., not designated for publication) (holding trial counsel's strategic decision not to request interpreter was reasonable; thus, counsel not deficient). We overrule issue five.

## V. CONCLUSION

Having overruled issues one through five, we affirm the trial court's judgment.

LEE GABRIEL
JUSTICE

PANEL: MCCOY, MEIER, and GABRIEL, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 25, 2013

24