**In The**

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

**NO. 09-20-00099-CR**
_____

**EX PARTE MARTIN DIAZ CARRILLO**

**On Appeal from the 75th District Court**
**Liberty County, Texas**
**Trial Cause No. CR-29758-A**

**MEMORANDUM OPINION**

Martin Diaz Carrillo appeals from the habeas court's denial of the application

Carrillo filed for habeas relief. In the application, Carrillo asked the habeas court to

overturn a deferred adjudication order the trial court signed in November 2012 after

Carrillo pleaded guilty to an indictment charging him with possession of a controlled

substance, marijuana, in an amount that subjected him to the penalty range available

for second-degree felonies.[1] Following a hearing, the habeas court denied Carrillo's

---

[1]The indictment charged Carrillo with possessing marijuana that weighed more than 50 but less than 2,000 pounds. Tex. Health & Safety Code Ann. § 481.121(b)(5).

1

application seeking relief from the 2012 order. The habeas court's order includes findings of fact and conclusions of law, which explain why the habeas court found Carrillo's application to have no merit.[2]

After the habeas court denied the application, Carrillo appealed.[3] On appeal, Carrillo argues the evidence he provided to the habeas court to support his application shows the plea he agreed to in 2012 was involuntary. Carrillo argues the habeas court abused its discretion by finding otherwise, given the evidence he provided the habeas court to support his application. According to Carrillo, the evidence shows he received ineffective assistance of counsel during proceedings that led to his plea and that he would not have pleaded guilty to possession of marijuana had his attorney correctly advised him about the effect pleading guilty would have on his legal rights as an alien to live in the United States. Carrillo also argues the evidence shows he speaks mostly Spanish. Based on that, Carrillo concluded the trial court should have appointed an interpreter to assist him during the plea proceedings, which ended with his plea.

---

[2]*See* Tex. Code Crim. Proc. Ann. art. 11.072, § 7 (requiring the habeas court to "enter a written order including findings of fact and conclusions of law").

[3]*Id*. art. 11.072, § 8 (providing applicants with the right to appeal if the habeas court denies the application for habeas relief complaining about a trial court's community supervision order).

Deferring to the habeas court's right to decide whether Carrillo's evidence was credible, we conclude Carrillo's arguments lacks merit. The habeas court was also not required to accept as true Carrillo's evidence suggesting he needed an interpreter in order to understand the proceedings that occurred on his criminal case in 2012. Because Carrillo's arguments lack merit, we will affirm.

Background

*The 2012 Indictment and Plea*

Until 2020, although a citizen of the United Mexican States (Mexico), Carrillo was a lawful resident alien citizen and living in the United States. In September 2012, a grand jury in Liberty County, Texas indicted Carrillo, alleging that police found him in possession of between 50 and 2,000 pounds of marijuana. The offense occurred, according to the indictment, in February 2012.

Carrillo retained counsel to defend him in the criminal case the State brought against him in 2012. In November 2012, Carrillo appeared in the 75th District Court of Liberty County, Texas, and pleaded guilty to possessing marijuana weighing between 50 and 2,000 pounds, as alleged in the indictment. He did so in return for a plea bargain agreement. Under Carrillo's plea agreement, the Liberty County District Attorney agreed to recommend to the trial court that it place Carrillo on deferred adjudication, community supervision (deferred adjudication) in exchange

3

for Carrillo's agreement to plead guilty to the 2012 indictment charging him with possession of marijuana.

By October 2017, Carrillo successfully completed the requirements imposed on him under the trial court's deferred-adjudication order. That same month, the trial court dismissed the criminal case filed in 2012, discharging the obligations the State of Texas had to him under the plea agreement Carrillo made to avoid the risk of losing by going to trial and ending up in prison.

*Carrillo Goes to Mexico*

In 2019, Carrillo went to see his mother in Mexico. His decision to leave the United States, however, brought him to the attention of federal officials when he tried to re-enter the United States. ICE detained Carrillo at the border. ICE then launched an administrative proceeding against Carrillo in Immigration Court. In that proceeding, ICE sought an order to have Carrillo, an alien, removed from the United States, relying on that proceeding on the guilty plea Carrillo entered in 2012 on the indictment charging him with violating Texas drug laws. Under federal law, "any alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . ., other than a single offense involving possession for one's

4

own use of 30 grams or less of marijuana, is deportable."[4] For purposes of immigration law, federal law also provides that Immigration Courts are to treat deferred-adjudication orders, if based on a guilty plea, as a conviction under federal law.[5]

## *The Habeas Proceeding*

To fight the proceeding to deport him, Carrillo applied for a writ of habeas corpus in the 75th District Court of Liberty County, Texas. In his application, Carrillo alleged the guilty plea he entered in 2012 on the possession of marijuana charge was involuntary and therefore invalid. To support his claim, Carrillo alleged his plea was involuntary because the attorney who represented him in the proceedings failed to fully explain the effect pleading guilty would have on Carrillo's status as a permanent legal resident alien living in the United States.[6]

---

[4]8 U.S.C.A. § 1227(a)(2)(B)(i) (LEXIS through Pub. L. 110-557).

[5]8 U.S.C.A. § 1101(a)(48) (LEXIS through Pub. L. 113-76) (defining *conviction* for immigration cases to include cases in which defendants have pleaded guilty and received any form of punishment or penalty even if the sentence was never executed or imposed); *see also Moosa v. I.N.S.*, 171 F.3d 994, 1005-06 (5th Cir. 1999) (explaining under Texas law, deferred adjudications following guilty pleas are treated as convictions under federal law as that law applies to aliens on questions of immigration).

[6]Under federal law, the term *lawfully admitted for permanent residence* "means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed[,]" which means living in the United States after receiving a green card. *See* 8 U.S.C.A. § 1101(a)(20) (LEXIS

Carrillo also signed an affidavit supporting his application for habeas relief. In it, Carrillo swore that although currently in ICE's custody, he is "under an order of removal" from the United States.[7]

After Carrillo filed his application, the Liberty County District Attorney's Office filed a copy of the transcript from the hearing in 2012 on Carrillo's guilty plea. After considering the evidence the State and Carrillo filed in the habeas case and the habeas court's recollection of what happened during the proceedings that occurred before him as the judge of the 75th District Court in 2012, the habeas court denied Carrillo's request seeking a writ of habeas corpus to undo his plea. On appeal, Carrillo argues the habeas court abused its discretion by denying his application because the evidence supporting the application shows his plea to the indictment charging him with possessing marijuana was involuntary.[8]

---

through Pub. L. 113-76.) Unlike federal courts, Texas courts do not treat deferred-adjudication orders as final convictions when they apply the laws of Texas to the case. *Davis v. State*, 968 S.W.2d 368, 371 (Tex. Crim. App. 1998) ("Deferred adjudication cannot be a 'final conviction,' because there has been no judgment of guilt.").

[7]The record contains no more evidence about the status of the removal proceedings ICE launched against Carrillo in Immigration Court. The record also does not include the order of removal Carrillo referred to in his application seeking habeas relief.

[8]*See Padilla v. Kentucky*, 559 U.S. 356 (2010).

6

The transcript of the 2012 proceedings on Carrillo's plea was before the habeas court when it denied Carrillo's application seeking habeas relief. As for whether Carrillo knew of the immigration consequences of his plea, the transcript of the 2012 proceedings reflects that in 2012, the trial court admonished Carrillo about the effects of pleading guilty, admonishments that included warning him about the plea's impact on his status as an immigrant.

THE COURT: Mr. Carrillo, I have got to admonish you that if you plead guilty to this case that it will subject you to deportation.

If you plead guilty to this case and you are deported, it will also prevent you from reentering the United States. Do you understand that?

[CARRILLO]: Yes, sir.

THE COURT: Did you have a long conversation with your lawyer about that?

[CARRILLO]: Yes.

THE COURT: So, you fully understand the consequences of entering a plea of guilty as far as your immigration status is concerned?

[CARRILLO]: Yes, sir.

THE COURT: [To Mr. Carrillo's attorney,] did you have a conversation with Mr. Carrillo, your client, about the consequences of entering a plea to the charges as set forth in this indictment?

7

[ATTORNEY]: Three in depth conversations, yes, sir.

THE COURT: Are you satisfied that [Carrillo] thoroughly understands that if he pleads guilty to this case he will be subject to being deported?

[ATTORNEY]: [Carrillo] understands he will be subject to being deported, Your Honor.

The transcript from the 2012 hearing reflects Carrillo answered every question the trial court asked without ever expressing any difficulty in understanding the proceedings. For example, when the trial court asked Carrillo whether he could read English, he responded: "Yes, sir." He also agreed when the trial court asked Carrillo if he understood the proceedings and had thoroughly discussed the plea agreement with his attorney in the case. When the trial court asked the parties' attorneys whether there were plea negotiations in the case, the District Attorney advised the court he was "asking the court to defer a finding of guilt[.]" Then, the trial court asked Carrillo whether he wanted the court to follow the District Attorney's recommendation. Carrillo answered: "Yes, sir." Carrillo also told the court that no one had talked him into pleading guilty. The trial court also asked Carrillo whether he read the stipulations, waivers, and admissions, and whether the statements in the document containing the stipulations were true. Carrillo answered: "Yes, sir." The trial court also asked Carrillo whether it had been explained to him that, by signing the document containing the stipulations and agreement to plead guilty, he "would

8

be giving up some important federal and state constitutional rights[.]" Carrillo answered: "Yes, sir."

Carrillo's attorney also advised the trial court that, when she met with Carrillo in the case, she went over the stipulations with him. Based on Carrillo's statements, the evidence showing Carrillo signed the stipulations and agreed to plead guilty, and what the attorneys and the trial court said while in open court, the trial court concluded at the end of the plea proceeding that the evidence supported a finding of guilt. In carrying out the plea agreement, the trial court put Carrillo on deferred adjudication for five years.

The document containing the stipulations Carrillo signed in 2012 warns about the immigration consequences of a guilty or no contest plea. The stipulation states: "If you are not a U.S. citizen, a plea of guilty or nolo contendere may result in your deportation, exclusion from admission to the country or denial of naturalization under federal law." Carrillo's name appears on the document below a typewritten statement, which states that by signing the document, the defendant represents he understands the document and is "aware of the consequences of my plea."

The attorney who represented Carrillo in 2012 also signed the document that contains the stipulations relevant to Carrillo's plea. Just above the attorney's name,

the document states that, by joining in the document, the attorney intended to certify that "all of the defendant's statements were freely and voluntarily made[.]"

In the application Carrillo filed for habeas relief, he asked the habeas court to set aside the plea he entered in 2012 for three reasons. First, Carrillo claimed the attorney who represented him on his criminal case in 2012 failed to inform the court that Carrillo mainly speaks Spanish or to ask the trial court for an interpreter to assist Carrillo in the proceedings. Second, Carrillo suggested the attorney who represented him in 2012 advised him that by pleading, it would not affect his rights as a permanent resident alien to live in the United States. Third, Carrillo asserted the attorney who represented him in 2012 failed to move to suppress the evidence police seized from his employer's truck after police stopped him while he was driving the truck. Carrillo alleged the attorney's failure to provide him with proper advice, failure to properly investigate his case, and failure to file a motion to suppress were prejudicial to him because he would have elected to go to trial to avoid being convicted of a crime had his attorney advised him that a guilty plea for possessing marijuana in the amount at issue in his case made him deportable under federal law.[9] Carrillo also claims his attorney should have filed a motion to suppress before advising him to accept the plea bargain proposal made by the District Attorney in

---

[9]*Strickland v. Washington*, 466 U.S. 668 (1984).

10

2012. In his affidavit, Carrillo states he told his attorney the truck he was driving belonged to his employer, other people had access to it, and he never gave the police permission to conduct a search. Carrillo also swore that while he can speak English, if a person speaks too quickly or with a pronounced accent, he cannot fully understand what the person said. Carrillo also swore his attorney knew that he speaks mainly Spanish, since that is his native language. Carrillo's affidavit concludes that had his attorney advised him "that for federal law and especially immigration law purpose[s,] [] my plea to a deferred adjudication is a conviction even though the State Judge says that he does not find me guilty, I would not have entered the plea; but, I would have insisted on going to trial[.]"

Carrillo's wife also filed an affidavit. She swore she was present when Carrillo's attorney advised him about the consequences of his plea. According to Carrillo's wife, Carrillo's attorney told him he "would have no immigration consequences to his plea that day except that he would never be able to become a U.S. [c]itizen." Carrillo's wife explained in her affidavit that Carrillo's attorney spoke to him in English, not in Spanish, so she interpreted the conversation for him because Carrillo "did not understand what [his attorney] was saying."

The record Carrillo created in the habeas court does not include an affidavit from the attorney who represented him in 2012. Carrillo's application explains that failure, however, by stating the attorney who represented Carrillo in 2012 died before November 2019, the date Carrillo filed his application and asked the habeas court to overturn his plea.

In February 2020, the habeas court signed an order denying Carrillo's application.[10] The order denying Carrillo's application contains ten findings of fact, but we need to mention only six of the findings since these are the findings that tie directly to the arguments Carrillo presents in his brief. We have renumbered these six findings for convenience, and in them, the habeas court found:

1.  The Court admonished [Carrillo] that if he pled guilty to the charge in the indictment, he would be subject to deportation and would be denied re-entry into the United States.
2.  Prior to the plea, [Carrillo's attorney] fully advised [Carrillo] of the immigration consequences associated with entering a guilty plea.
3.  [Carrillo] was fully advised by the Court, his attorney and acknowledged he understood the collateral consequences of entering a guilty plea to the allegations contained in the indictment.

---

[10]The procedures that apply to habeas applications like Carrillo's allow—but do not require—habeas courts to conduct formal evidentiary hearings. *See* Tex. Code. Crim. Proc. Ann. art. 11.072 § 6(b) ("In making its determination, the court may order affidavits, depositions, interrogatories, or a hearing, and may rely on the court's personal recollection."). Carrillo has not alleged the habeas court erred by failing to allow him to fully develop the record on his application seeking habeas relief.

4.     [Carrillo] entered his guilty plea with his "eyes wide open."
5.     The facts alleged in the Application and [Carrillo's] affidavit are not credible.
6.     The affidavit testimony of [Carrillo's wife] is not credible.

The habeas court's order also contains conclusions of law. In them, the habeas court concluded that Carrillo was advised of the collateral consequences of his plea, Carrillo then freely, voluntarily, knowingly, and intelligently pleaded guilty, and Carrillo failed to prove that, "but for trial counsel's alleged deficiencies[,] the result of the proceedings would have been different."

Issues

Carrillo raises two issues in the brief he filed to support his appeal. First, he argues the attorney that represented him in 2012 failed "to advise [Carrillo] . . . that it was a certainty [] he would be deported, excluded or denied admission, if he plead[ed] to a crime involving a controlled substance." Second, Carrillo argues he suffered prejudice because the attorney who represented him in 2012 failed to discharge the duties she owed to him to provide him with reasonable professional legal assistance on his case.

## Standard of Review

In habeas proceedings, the applicant must prove, by a preponderance of the evidence, facts sufficient to show the applicant is entitled to relief.[11] Here, the record shows the habeas judge decided the merits of Carrillo's claims without conducting a formal evidentiary hearing. Instead, the judge decided whether to grant the application by relying on the pleadings, the evidence the parties produced to support and oppose the application, and the habeas court's recollection of the proceedings in 2012.[12] In our review of a habeas judge's ruling on a writ filed under Article 11.072 of the Code of Criminal Procedure, we apply an abuse-of-discretion to resolve the issues raised in the appeal.[13] This means we afford "almost total deference to a habeas court's factual findings when they are supported by the record, especially when those findings are based on credibility and demeanor."[14] "This degree of deference also applies to any implied findings and conclusions supported by the record."[15] But if the habeas judge's resolution of the application turns "only on the application of legal standards, the appellate court reviews those determinations de

---

[11]*Ex parte Richardson*, 70 S.W.3d 865, 870 (Tex. Crim. App. 2002).
[12]*See Ex parte Alfaro*, 378 S.W.3d 677, 679 (Tex. App.—Beaumont 2012, no pet.); *Ex parte Crotts*, 2019 WL 6314906, at *4 (Tex. App.—Houston [1st Dist.] Nov. 26, 2019, no pet. h.).
[13]*Diamond v. State*, 613 S.W.3d 536, 544 (Tex. Crim. App. 2020).
[14]*Id*.
[15]*Id*.

novo" and will uphold the ruling if it is correct under any theory of law that applies to the case.[16]

Carrillo's application alleges the attorney who represented him in his criminal case discharged her duties to him in such a deficient manner that he was deprived of the right to effective assistance of counsel on his case, a claim measured against the standards established in *Strickland.* Under *Strickland*, the defendant must prove the attorney who represented him in his criminal case performed at a level falling below an objective standard of reasonableness.[17]

We turn first to Carrillo's argument claiming the trial court abused its discretion by finding he knowingly and voluntarily pleaded guilty. To be voluntary, the "defendant must have an actual awareness of the nature and gravity of the charges against him and of the constitutional rights and privileges" that he will be giving up by pleading guilty.[18] To establish a plea was voluntary, knowing, and intelligent, Due Process requires the defendant's plea to "be the expression of the defendant's own free will and must not be induced by threats, misrepresentations, or improper promises."[19] If the habeas court determines the defendant's plea resulted

---

[16]*Id.*

[17]*Strickland*, 466 U.S. at 688.

[18]*Davison v. State*, 405 S.W.3d 682, 686-87 (Tex. Crim. App. 2013).

[19]*Kniatt v. State*, 206 S.W.3d 657, 664 (Tex. Crim. App. 2006); *see* Tex. Code Crim. Proc. Ann. art. 26.13(b).

15

from the erroneous advice of counsel, the reviewing court must find the plea was not a knowing and voluntary plea, which renders it involuntary under the standards in *Strickland*.[20]

In part, Carrillo argues he could not enter a valid plea because he speaks Spanish. He suggests the habeas judge should have appointed an interpreter to assist him in the proceedings that ended with his plea. Due Process requires that a judge appoint an interpreter to assist the defendant if the defendant needs one to understand the proceedings.[21] The judge's duty, however, does not arise just because the judge learns the defendant can speak more than one language. Instead, the duty turns on whether a party asked the judge for an interpreter, or whether the judge developed a bona fide doubt that some language barriers existed sufficient to leave the defendant unable to understand the advantages and disadvantages of the choices he faced between pleading guilty or going to trial.[22] Here, there is no evidence and no claim by any party that anyone asked the trial court in 2012 for an interpreter. The habeas court also found Carrillo entered a knowing, voluntary, and intelligent plea. Thus, the habeas court rejected Carrillo's claim asserting that it had any bona fide doubt

---

[20]*Ex parte Moussazadeh*, 361 S.W.3d 684, 688-89 (Tex. Crim. App. 2012); *Ex parte Harrington*, 310 S.W.3d 452, 458-59 (Tex. Crim. App. 2010).
[21]*Linton v. State*, 275 S.W.3d 493, 500 (Tex. Crim. App. 2009).
[22]*Garcia v. State*, 149 S.W.3d 135, 145 (Tex. Crim. App. 2004); *see* Tex. Code Crim. Proc. Ann. art. 38.30(a).

16

regarding Carrillo's ability to understand the proceedings that occurred in 2012. The record contains evidence that supports the habeas court's findings. The transcript from the hearing in 2012 on Carrillo's plea is some evidence showing that Carrillo reads and understands English. Carrillo acknowledged as much in the stipulations he signed that accompanied his plea. And in the hearing in 2012, Carrillo answered over fifteen questions by the trial court without ever stating he was having a problem understanding what the proceedings involved or did not fully understand the advantages of a guilty plea and the risks he faced by choosing to plead not guilty and having the case proceed.

Even if it's true that a person is most proficient when using his native language, that fact does not necessarily mean that he lacks a sufficient ability to communicate in English that he cannot understand proceedings conducted in English by participating in them so he can make an informed choice about whether to plead guilty in the case.[23] Carrillo's affidavit does not even assert he was unable to understand the proceedings that occurred in court. Instead, he merely states that should someone speak too quickly or with a pronounced accent, he would find what was said difficult to understand. He did not claim the trial court spoke to him in a

---

[23]*See Linton*, 275 S.W.3d at 502; *Hernandez v. State*, 986 S.W.2d 817, 822 (Tex. App.—Austin 1999, pet. ref'd).

17

pronounced accent or that the trial court spoke too quickly such that the trial court communicated information beyond the information in the transcript of the hearing.

Next, we address Carrillo's claim that his attorney failed to provide him with accurate advice about the immigration consequences of his plea. In *Padilla*, the U.S. Supreme Court held the Sixth Amendment requires attorneys in criminal cases to advise their clients accurately that they are subject to being deported should they plead guilty to charges that make them deportable under federal laws that apply to aliens who are legally in the United States.[24] Citing *Padilla*, the Texas Court of Criminal Appeals explained that an attorney representing a defendant must provide his client, if not a U.S. citizen, with "accurate legal advice about the 'truly clear' consequences of a plea of guilty to an offense that, as a matter of law, renders him 'subject to automatic deportation.'"[25]

Here, the record shows the trial court, in 2012, admonished Carrillo that should he plead guilty, the plea "will subject you to deportation." When the trial court asked Carrillo if he understood pleading guilty would subject him to being deported, he replied "Yes." The trial court also questioned Carrillo's attorney about whether she discussed the consequences of Carrillo's plea with him. According to

---

[24]*Padilla*, 559 U.S. at 374.

[25]*Torres*, 483 S.W.3d 35, 46 (Tex. Crim. App. 2016) (quoting *Padilla*, 559 U.S. at 360, 369).

the transcript from the hearing, Carrillo's attorney represented she had three "in depth" conversations with Carrillo about the immigration consequences of his plea. Then, the trial court asked Carrillo's attorney if she was satisfied that Carrillo understood pleading guilty would make him "subject to being deported." She answered: "He understands he will be subject to being deported, Your Honor."

The affidavits Carrillo and his wife filed discussing what Carrillo's attorney told Carrillo differ somewhat from the information available in the transcript from the hearing in 2012. As the factfinder, the habeas judge resolved those disputes by relying on the statements made in open court rather than by relying on Mr. and Mrs. Carrillo's affidavits about what Carrillo's attorney told him when she met with him before the trial court heard the plea. For instance, in his affidavit, Carrillo stated that in 2012, his attorney "did not speak to [him] about the Immigration Consequences" of his plea. The evidence in the 2012 hearing shows otherwise, as Carrillo's attorney told the trial court she met with Carrillo three times to discuss the immigration consequences of his plea. For a similar reason, the habeas court had the discretion to find Mrs. Carrillo's affidavit not credible regarding what she heard Carrillo's attorney tell him when she met with him before the trial court conducted the hearing on his plea. According to Mrs. Carrillo, the attorney told Carrillo that pleading guilty "would have no immigration consequences to his plea that day except that he would

19

never be able to become a U.S. [c]itizen." In contrast, the transcript from the hearing in 2012 shows Carrillo's attorney told him about the immigration consequences that could result from his plea.

Carrillo also argues his attorney provided him with ineffective assistance in 2012 because she failed to properly investigate his case and then failed to move to suppress the evidence police seized from the truck Carrillo was driving when he was stopped. When representing a defendant in a criminal case, the defendant's attorney must conduct a reasonable investigation into the case, but the amount of investigation required is much less when the facts the attorney learns would lead a reasonable attorney to believe that no further investigation was required.[26] And when an attorney's client expresses a desire to plead guilty, the attorney need not undertake the same investigation that she would undertake to investigate a case where the defendant told the attorney he wanted to plead not guilty.[27]

In his application, Carrillo never explained what his attorney might have discovered based on a further investigation that would have, in all probability, changed the outcome in Carrillo's case. That the truck was owned by his employer

---

[26]*Ex parte LaHood*, 401 S.W.3d 45, 50 (Tex. Crim. App. 2013) (citing *Strickland*, 466 U.S. at 691).

[27]*Toupal v. State*, 926 S.W.2d 606, 608 (Tex. App.—Texarkana 1996, no pet.).

is not by itself evidence that shows Carrillo is not a person who possessed the marijuana in the truck. And since the trial court found Carrillo's affidavit not credible, we cannot presume the habeas court erred by failing to accept Carrillo's argument claiming he told the attorney who represented him in 2012 that he never consented to the request police made to search the truck. Carrillo also failed to support his application with evidence to show that a reasonable attorney, based on the statements in Carrillo's affidavit, would have filed a motion to suppress. Carrillo also told the trial court in the hearing in 2012 that he was satisfied with his attorney and that he had no complaints.

Carrillo reaped significant benefits from the bargain he made in 2012. By pleading guilty, Carrillo resolved the criminal charges that were brought against him in 2012 and avoided the risk of being convicted in a trial on a case that exposed him to as much as a twenty-year sentence.[28] Carrillo failed to prove that no reasonable attorney would have recommended that he reject the plea bargain under the circumstances of his case.[29] We conclude the record supports the habeas court's ruling denying Carrillo's application for relief.

---

[28]*See* Tex. Health & Safety Code Ann. § 481.121(b)(5); Tex. Penal Code Ann. § 12.33(a).

[29]*Bone v. State*, 77 S.W.3d 828, 835 (Tex. Crim. App. 2002).

21

Conclusion

Because Carrillo's arguments lack merit, the trial court's judgment is

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on September 24, 2020
Opinion Delivered March 31, 2021
Do Not Publish

Before Golemon, C.J., Kreger and Horton, JJ.